## ABRAM BLOOM

*v.*

## CHRISTIAN KOCH, SR.

[Submitted July 15th, 1901. Decided December 6th, 1901.
Filed April 23d, 1902.]

1. A lotowner is not justified in erecting a barrier of close boards on his lot in front of the windows of his neighbor's adjoining house, in such manner as to obstruct the influx of light and air to those windows, for the purpose of preventing the throwing of refuse from those windows onto his lot, where a barrier which would not so obstruct the light and air would be equally effective for the desired purpose.

2. The fact that a lotowner permitted persons of bad character, whose behavior was a nuisance, to occupy a part of the house on a lot, does not justify the erection of a barrier by the adjoining lotowner, the effect of which is to obstruct the influx of light and air to the house, where the objectionable tenants were ejected as soon as notice of their conduct was given to the landlord.

3. Defendant owned three adjoining lots, and erected a house on the middle one, fronting on the street and covering the whole width of the lot. On the east side of the house was an inset, in which windows were built. There were no other windows on that side of the house. The house on the east lot was built forty-five feet back from the street; the intervening space being a lawn. and a paved alleyway between it and the line of the middle lot.—*Held*, that, in a grant of the middle lot, the existence of the inset in the house thereon would not rebut the implication of a grant of the right of light and air over the lawn.

4. The construction by defendant of a house so that a part of it could be lighted only by certain windows opening on a vacant lawn in front of defendant's adjoining property, created an easement in the light and air from defendant's lawn, which passed with the conveyance of the house.

5. The fact that the conveyance expressly granted the right to use the alley on the west lot, does not exclude the implication of a grant of the right to the light and air over the east lot.

6. The obstruction of the right to the influx of light and air by a private person will be restrained, notwithstanding compensation can be made in damages; such right being property of which the owner cannot be deprived by private persons for private use, even on just compensation made.

On final hearing on bill, answer and proofs.

*Mr. Jacob W. De Yoe* and *Mr. Walter R. Hudson,* for the complainant.

*Mr. Francis Scott,* for the defendant.

PITNEY, V. C.

The complainant, Bloom, is the owner of a house and lot No. 70 Matlock street, in the city of Paterson, facing on the south side of that street, the lot being twenty-five feet front and one hundred feet deep. The defendant, Koch, is the owner of the lots adjoining on each side—Nos. 68 and 72—of the same width and depth severally. The complainant files his bill to abate and enjoin the continuance of an erection placed by Koch on his land, which complainant claims is a nuisance and wrongful injury to his land. The nuisance consists of a tight wooden fence or boarding, about twenty-five feet high and sixteen feet wide, erected by Koch in July, 1900, on lot No. 72, close to the line between his lot and complainant's lot, which has the effect of nearly or quite blinding six windows in three stories of complainant's house.

The right involved is that of light and air.

The dwelling on complainant's lot is built on the whole width thereof, bounding on the street, is forty-two feet in depth, and has three stories and an attic. The defendant's lot, No. 72, has upon it no building for a distance of forty-five feet from the street, that space being used as a lawn, and in the rear of that lawn is a dwelling three stories high, but not extending the whole width of the lot, leaving a vacant space of about five feet on the west side thereof next to complainant's lot.

On the east side of complainant's house, and opening on this lawn, are eight windows, a pair close together on each of the floors. These windows are situated in an inset or rectangular notch, constructed in complainant's house, eighteen inches in depth and twelve feet in length, on the side line of the lot.

The result of the boarding, which is set close to the westerly side of defendant's lot and covers the whole width of the notch and two feet on each side, is to leave only a space of between eighteen and twenty inches between the side of the house at that point and the boarding. The effect of the boarding is, plainly to the eye, and according to the evidence, to seriously obstruct the influx of the light into the rooms through the windows in question. They have no other windows, and can only

be used for the greater part of the day by the aid of artificial light. This lack of light is, of course, felt most seriously on the lower floors.

The complainant founds his right upon a deed of conveyance of the house and lot No. 70, made to him by the defendant while the defendant was the owner of lot No. 72. That conveyance is dated November 27th, 1899. At that time there was no boarding where the defendant subsequently erected it.

The theory of the complainant is that the influx of light and air over the vacant yard or lawn in front of defendant's house was an apparent and continuous easement, and thereby an appurtenant to complainant's house, and that it passed under the language found in the deed:

"together with all and singular the houses, buildings, trees, ways, waters, profits, privileges and advantages, with the apputenances to the same belonging or in anywise appertaining."

The circumstances more in detail are as follows: The defendant is a builder by trade, and has been in the habit of buying building lots in the city of Paterson, erecting houses thereon and selling them. In 1881 he became the owner of lots Nos. 68 and 70, adjoining each other, on the south side of Matlock street. Immediately afterwards he erected on the front part of lot No. 70 a three-story-and-attic tenement house, twenty-five feet wide and forty-two feet deep, with a narrow hall running lengthwise through the middle of it on each of the three floors, with three narrow rooms on each floor on each side. The house had gable roofs pitching toward the street and rear respectively, the gables facing the adjoining lots; and the attic was divided somewhat similarly to the room below, and lighted by windows in the gables, opening on the adjoining lots. On the three main stories the front rooms were sitting-rooms, the middle rooms were kitchens, and the rear rooms were bedrooms. The front and rear rooms had their light from the front and rear of the house. Opposite the kitchen on the east side, next to lot No. 72, the notch of eighteen inches was inserted, and in that were two windows for each floor, which are the windows here in question.

The kitchens on the other side, next to lot No. 68, were lighted by windows in the same way, opening on an alley on lot No. 68, but without any notch.

(In point of fact the building on lot No. 70, just mentioned, encroached a few inches on the line of lot No. 68, a fact quite immaterial except that it explains some of the evidence.)

Then, on lot No. 68, the defendant built three dwellings, covering the whole of the lot, except an alleyway seven feet wide next to lot No. 70, extending from the street about eighty feet to a dwelling which covered nearly the whole of the rear of the lot. This alleyway provided access for light and air to the three buildings on lot No. 68, and also to the kitchens on the west side of the house on lot No. 70, and also a passageway from the rear of lot No. 70 to the street.

The notch on the east side of the house on lot No. 70, forming one side of the kitchens, was obviously made with a view of being used for light and air in case a building should be erected entirely up to the line on lot No. 72, then vacant.

Subsequently, in 1888, the defendant obtained a conveyance to himself of the title of lot No. 72, and then proceeded to build a house on the rear of that lot, the front of which was five feet farther from the street than the rear of the house on lot No. 70. That house was adapted for three families, and did not cover the whole width of the lot, but left a passageway between it and the line of lot No. 70, besides the vacant space or lawn in front. (See plate.)

Affairs were in that situation when the defendant made the conveyance in question to the complainant of lot No. 70. In that conveyance was inserted a special provision for the use by the owner of lot No. 70 of a passage between the rear of lot No. 70 and the street over the alleyway which was located on lot No. 68, on the west side of lot No. 70; also for the joint use by the owners of both lots of a sewer laid through the same, and an agreement to share the expense of its maintenance; but there is no mention of any right of influx of light and air to any part of the house, nor was there any reservation of the right to obstruct the same.

The complainant swears that at the time of the signing of the contract for the purchase of lot No. 70 and in arranging for the special right of the use of the alley on the west side for a passageway, he inquired of the defendant as to how he would

get his light on the other side, and that the defendant said to him: "Why, you see that my house on lot No. 72 is set way back, leaving an open space, and that is all you want," or words to that effect. But this is denied by the defendant, and I shall consider the case as if nothing had been said upon that subject at or before the time the conveyance was made.

It is quite manifest that the right to obtain light and air from the front yard of lot No. 72 for the four kitchens on the east side of lot No. 70 is a decided and important addition to the value of that lot, and the deprivation of that right will be a serious injury to it and materially reduce its renting value. This is shown by the evidence.

Several objections are made to granting complainant relief.

*First.* The defendant justifies the erection of the boarding, on the ground that the complainant permitted his tenants to throw kitchen refuse, bones, empty cans, pieces of paper and the like from the windows onto his lawn, and some evidence was given in support of that allegation. Evidence was given denying it. The defendant alleged that he was obliged to keep a barrel for kitchen refuse placed immediately under these windows. The proof was that he did keep a barrel near the front fence, in which he put the grass cuttings from his lawn and some refuse matters which he found there in clearing it up, but the occupants of the kitchens all denied emphatically that they threw any refuse there, and at most the amount thrown was very small. But be that as it may, and granting that complainant's tenants did trespass on his land to a serious extent in that respect, I am of the opinion that it furnishes no excuse in law or equity for such an infringement of complainant's rights as is shown, if those rights exist. Granting, for argument's sake, that the defendant was justified in law and equity in erecting a physical barrier at the place in question to prevent the recurrence of trespasses on his land, still there was no necessity, nor was it reasonable, to construct that barrier of close boards which would obstruct the light. One much cheaper and quite as efficient would have been an ordinary wire screen stretched between the two high posts erected to support the boards.

. *Second.* Then it is said that complainant permitted a family or families of bad character to occupy the attic floor of his building, and that their behavior was such as to create a nuisance in the neighborhood. It appears that something of that kind did occur for a short time, but as soon as complainant was notified of it he ejected the offensive tenants. This forms no excuse.

Further, to rebut the implication of a grant of the right of light and air over the lawn, the defendant points out and relies upon the fact that the house conveyed was provided with the recess or notch before referred to. It is argued with much force that that peculiarity in the structure of the house conveyed notice to the complainant when he bought it that it was intended for the purpose of permitting the owner of the adjoining property to build up to the line on his side.

At first I was much struck with that argument, but upon reflection, I am unable to accede to it. If the notch was of sufficient depth to afford of itself reasonable light and air to the kitchens, the argument would have more force, but, in point of fact, it is quite clear that it is not of itself sufficient for that purpose, and may well have been contrived with a view to the hope that the party building on the adjoining lot would leave a similar notch in the house there to be erected, and that the two together might produce the desired result, or, as the best contrivance available, to give some light and air in case no arrangement could be made with the adjoining owner. We all know that human beings do live in places provided with a mere glimpse of light. But, standing by itself, I think it cannot be held to be an equivalent of an express notice by the grantor, the defendant, to the grantee, the complainant, that the deed of conveyance should not have the ordinary effect given to such a conveyance. And certainly it cannot have the effect of a reservation by the grantor of a right to build up to his line opposite those windows, and unless it has that effect, I do not see that it can have any.

And then the whole situation must be considered. The defendant was the owner of all the properties. He had deliberately arranged the dwellings on them in such a manner as would

give all the windows a good supply of light and air.   He had erected a dwelling on lot No. 72, forty-five feet from the street, leaving a space of about ten feet in the rear of it, and a lawn, as we have seen, in front, and a paved alleyway of five feet between it and the line of lot No. 70, showing an intention to make a passageway from the rear of that house to the street on the side next to lot No. 70.   Thus the indications were that if another dwelling were thereafter erected on the lawn in the front yard of lot No. 72 that passageway would continue along the east side of lot No. 70 to the street, and would not be built upon,. and, if so continued, would afford a space of six and a half feet for light and air in front of the windows in question.

Taking the situation as a whole, therefore, I cannot find that the notch in question can have the force claimed for it by the defendant.

We now come to the main question, namely, did the fact that those windows opened, at such close proximity, upon the vacant space or lawn in the front of defendant's adjoining property at the time he made the conveyance, and the fact that the house was so constructed that the kitchens which they lighted could get light from no other source, make the use of light and air from defendant's lawn an easement over his land of such a character as that the right to continue the enjoyment of the influx of light and air passed with the conveyance?

I had occasion to examine one phase of that question in the case of *Toothe* v. *Bryce, 5 Dick. Ch. Rep. 589.*   I refer particularly to the cases there cited, namely, *Palmer* v. *Fletcher, 1 Lev. 122; Cox* v. *Matthews, Vent. 239; Rosewell* v. *Pryor, 6 Mod. 116; Tenant* v. *Goldwin, 2 Ld. Raym. 1093;* and see *Gale Easem. *51, *53, *61, *63 et seq.;* and cases there cited.

The question of apparent easement of light was distinctly dealt with by Chancellor Runyon in the case of *Sutphen* v. *Therkelson, 11 Stew. Eq. 318,* and after an elaborate examination of the authorities, the right of the complainant, in a case like this, to prevent the erection of a building which would darken his windows, was established and enforced against the grantee of the original grantor, who had no other notice of the complainant's right than that derived from the records.

2

Bloom *v.* Koch.

In addition to the authorities cited by Chancellor Runyon in the principal case of *Sutphen* v. *Therkelson*, Mr. Stewart has added a number of additional authorities in a note.

The same question arose and was dealt with by Vice-Chancellor Bird in *Ware* v. *Chew, 16 Stew. Eq. 493.* There the complainant was a mere lessee of a one-story building adjoining a vacant lot, and with windows overlooking it belonging to the lessor, which was afterwards sold by the lessor to the defendant, Chew, who proposed to erect a building on it whose walls would be three feet and eight inches distant from the windows in the complainant's building, and he was enjoined. The point was taken that there should have been some proof produced to the court that a building erected at that distance from the windows would seriously affect the influx of light, but the learned judge held that the court would take notice of the laws of nature, and would itself determine the question of fact according to common experience; and, so acting, he held that the erection would necessarily be a nuisance.

In *Greer* v. *Van Meter, 9 Dick. Ch. Rep. 270,* Vice-Chancellor Reed dealt with a similar question with the same result, and apparently without having his attention called to either of the two cases just cited.

The contrariety of opinion among the jurists of this country upon the question of easements of light and air is dealt with exhaustively by Chancellor Runyon in *Sutphen* v. *Therkelson,* above cited, but I venture to make a suggestion as to one of the causes of that difference not noticed by him, and that is this: I think an examination of the authorities will show that the judges have given undue weight to one peculiarity of the easement of light and air, namely, the circumstance that the exercise of it by the owner of the dominant tenement over the servient tenement inflicts no actionable injury on the servient tenement. Hence the exercise of it by the owner of the dominant tenement cannot be arrested or the enjoyment rendered contentious by the ordinary means of bringing an action at law by the owner of the servient tenement. Hence our jurists have denied the soundness of the whole doctrine of ancient lights as held in England, and held that an easement of light

and air cannot be acquired by long use, and this is the foundation of the decisions in *King* v. *Miller, 4 Halst. Ch. 559,* and *Hayden* v. *Dutcher, 4 Stew. Eq. 217.* But some jurists have erroneously deduced from that doctrine the notion that there is no such thing as an easement of light and air. But the latter proposition is *non sequitur.* The circumstance that an easement cannot be acquired by long adverse user does not prove that there is no such easement. It is quite impossible to hold, with any kind of regard to the laws of our mother country adopted by us, that no such easement can exist. The fact that an easement cannot be acquired by adverse user does not prevent its being acquired by express or implied grant; by implied grant when it has the quality of being apparent and continuous.

Another defence set up against the construction sought for is that the maxim *expressio unius, exclusio alterius,* or, in other language, *expressum facit cessare tecitum,* applies, because of the express grant of a right in the alley on the west side of the building. If the grant had applied to light on the east side, and had declared the distance from the windows within which the defendant might build, it would have been a complete answer. An illustration of that principle is found in the case of *Denton* v. *Leddell, 8 C. E. Gr. 64.* There two tenements had belonged to Dr. Leddell, who had devised one to the complainant and the other to the defendant, at a time when there was an apparent and continuous easement in use by the defendant's lot of flowage of water over the complainant's lot; but by his will he expressly stated the height to which the defendant might flow the complainant's land, which was less than the then actual flowage. Chancellor Zabriskie (at *p. 67*) states with accuracy the general doctrine upon which the complainant relies in this case, and then states the effect of the limitation contained in the will, namely, that it restrained the implied grant. But no case can be found where a restrictive grant of that kind of an easement on one part of grantor's land can have any restrictive force upon an implied grant of an apparent and continuous easement of an entirely different character on another part of the grantor's land. In the present case the easements on the west side have nothing to do with the easements on the east

side of the lot granted. They are entirely disconnected, and they do not mention light or air.

This question is also dealt with by Vice-Chancellor Reed in *Greer* v. *Van Meter,* and I refer to his forcible and unanswerable reasoning found in *9 Dick. Ch. Rep. 274 et seq.*

With regard to the right of the influx of light and air, it is clear that if the injury be serious and appreciable, this court has no right to refuse its aid on the idea that the complainant may be compensated by damages at law. The considerations which influence the English courts in that respect must be applied here with great care. Under the British constitution, the courts may be, and in some cases have been, invested by parliament with the right to compel a party to take a money equivalent for an injury to his property, even where it is not taken or injured for a public purpose; but courts in this country have no such right. This was distinctly held by me in a case of nuisance by fouling water. *Beach* v. *Sterling Zinc and Iron Co., 9 Dick. Ch. Rep. 65.* At *p. 79,* I quoted from the opinion of Mr. Justice Dixon, speaking for the court of errors and appeals, in *Pennsylvania Railroad Co.* v. *Angel, 14 Stew. Eq. 316,* where he says (at *p. 329*) : "This principle rests upon the express terms of the constitution. In declaring that private property shall not be taken without recompense, that instrument secures to owners, not only the possession of property, but *also those rights which render possession valuable.* Whether you flood the farmer's fields so that they cannot be cultivated, or pollute the bleacher's stream so that his fabrics are stained, or fill one's dwelling with smells and noise so that it cannot be occupied in comfort, you equally take away the owner's property. In neither instance has the owner any less of material things than he had before, but in each case the utility of his property has been impaired by a direct invasion of the bounds of his private dominion. This is the taking of his property in a constitutional sense; of course, mere statutory authority will not avail for such an interference with private property. This doctrine has been frequently enforced in our courts."

The decree advised by me in that case was affirmed, on appeal, for the reasons stated in the court below. *10 Dick. Ch. Rep. 824.*

Bloom *v.* Koch.

Here the right of influx of light and air is property in the proper sense of the term, of which a man cannot be deprived, when taken for private purposes, even upon just compensation made.

The questions of law involved in this case may therefore be held to be settled in this state. The facts in the present case are undisputed, and that brings it within the rules laid down in *Hart* v. *Leonard, 15 Stew. Eq. 416.*

Whatever of apparent hardship there may be in the case for the defendant is much ameliorated by the circumstances. He is a man of experience in building dwellings on small lots and arranging economically for proper lighting and ventilation. It is quite manifest that he had all that in view when he arranged the different dwellings on these three lots, Nos. 68, 70 and 72; and when he conveyed lot No. 70 to the complainant he must have been thoroughly aware that the fact that the kitchen windows in question looked out on the front lawn of lot No. 72 aided in the sale of the lot, and that he obtained a larger price and a readier sale for it on that account. He may not have understood the law of the land, but that, in a case like this, is no excuse. He may have thought that the complainant might acquire a right to look over his land by long adverse user, and that may have been his motive in erecting the boarding. But, as has been remarked in some of the cases cited, it is not a question here of adverse user, out of which, in this country, no right can arise, but a question of the conveyance of a right by deed.

Of course, the extent of the right on defendant's lot is not here in question. The only question here is whether or not the boarding unreasonably obstructs the influx of light and air to complainant's windows; and holding, as I do, that it does so unreasonably obstruct such inflow, I do not necessarily decide that a boarding or a building set five or ten feet farther back would so unreasonably obstruct such influx. That question must be determined when it arises.

I will advise a decree for the complainant, with costs.