MARY J. DURKEE, ET AL. *v.* CITY OF BARRE.

October Term, 1908.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed January 16, 1909.

*Constitutional Law—Municipal Improvements—Assessments—*
*Notice—Due Process of Law—Impairment of Contract*
*Obligation—Vested Rights—Special Benefits—Fraud.*

No. 256, Acts 1906, amending the charter of the city of Barre and
   providing that when the city council decides that certain speci-
   fied existing improvements of any street were, when made, for the
   public good and convenience and necessity of individuals, it may
   order the street commissioners, on notice, to make assessments
   for the special benefits thereby conferred on the lands and build-
   ings abutting on such street, does not deprive the persons liable
   to such assessments of property without due process of law because
   empowering the city council to decide whether the public good
   and convenience and necessity of individuals requires the im-
   provement, without opportunity to the property owners to be
   heard thereon; since no assessment of property or question of
   special benefits is to be determined by that decision of the council,
   but only a foundation thereby laid for assessments that may or
   may not subsequently be made. *Stearns* v. *City of Barre*, 73 Vt.
   281, distinguished.
No. 256, Acts 1906, amending the charter of the city of Barre and
   providing that when the city council decides that certain speci-
   fied existing improvements of any street were, when made, for the
   public good and the convenience and necessity of individuals, it
   may order the street commissioners to assess not to exceed half
   of the cost of the improvements on the abutting property, "and in
   the same manner according to special benefits per front footage
   as is provided above for assessments on a petition * * * * or
   on a resolution to make improvements of like nature," does not
   authorize the street commissioners to make assessments without
   notice; the provisions referred to as specifying the procedure on
   petition or resolution expressly providing that assessments shall

be on twelve days' notice of the time and place to the parties interested.

The principles of taxation are not those of contract and a special assessment for a street improvement may be made upon an executed consideration, that is, for a public improvement already completed.

Special benefits resulting from a public improvement are such benefits as a landowner receives therefrom in excess of the benefits inuring to the public generally; and special assessments for any public improvement can be legally made only in proportion to such special benefits thereby conferred.

Whether No. 256, Acts 1906, amending the charter of the city of Barre and authorizing special assessments for public improvements already made be a curative act, or "new and original" as claimed, it involves only the principles of taxation, and so does not impair the obligation of contracts, nor impair vested rights, even though some of improvement when made was not duly authorized by resolution, the city having afterwards adopted it and paid therefor.

A bill seeking to enjoin the enforcement of certain assessments on abutting property for improving a street, and alleging that the street commissioners found the amount of frontage specially benefited to be a specified number of feet, and therefore adjudged each foot thereof to be specially benefitted in the sum of $3.4963, and assessed said lands and buildings abutting on the street according to such frontage, and thereupon assessed a named orator on a frontage of 20 feet, making her assessment $69.73, and giving with the same particularity the frontage and assessment of each of the other orators, in effect alleges that the assessments were made on the land of the orators according to the special benefits per front footage as found by the commissioners as is further shown by the allegation that many pieces of abutting land with buildings thereon were not assessed, as was well known to the commissioners, the implication being that said lands not assessed were not found by the commissioners to have been specially benefited by the improvements.

The facts that the street commissioners made equal assessments per front foot on abutting property for special benefits inuring thereto from a street improvement, when, as they well knew, some of the lots were deeper and had more valuable improvements than others, and made no assessments against other abutting lots, do not show

that the assessments are necessarily unjust and unequal, and therefore fraudulent.

APPEAL IN CHANCERY. Heard on demurrer to the bill at the March Term, 1908, Washington County, *Hall,* Chancellor. Demurrer overruled, and bill adjudged sufficient. The defendant appealed. The opinion states the case. See next case.

*Richard A. Hoar,* and *Martin & Sargent* for the orators.

The one idea underlying the validity of a local assessment is benefit received by the property from the making of a local improvement. *Re Bonds of Irrigation Co.,* 14 L. R. A. 755, note; *Barnes* v. *Dyer,* 56 Vt. 469; *Platt* v. *Milford,* 66 Conn. 320; 1 Abbott's Mun. Corp. 811; *Newark* v. *Inhabitants of Verona,* 58 N. J. L. 595; *Norwood* v. *Baker,* 172 U. S. 269; *Village of Morgan Park* v. *Wiswall,* 155 Ill. 262; *Ill. Cen. R. R. Co.* v. *City of Decatur,* 147 U. S. 190.

The bill shows that the street commissioners made the assessments without regard to the difference in the value of the property assessed. This is erroneous and should be set aside. *Howell* v. *Tacoma,* 3 Wash. 711; *Phil.* v. *Rule,* 93 Pa. St. 15; *Seely* v. *Pittsburg,* 82 Pa. St. 366; *Hampson* v. *City of Paterson,* 36 N. J. L. 159; 1 Abbott's Mun. Corp. 836; *State* v. *Brill,* 58 Minn. 152; *Reynolds* v. *City of Paterson,* 48 N. J. L. 435.

Where a tax is to be assessed by the value of the property, or in proportion to benefits, the right of the owner to be heard in some stage of the proceedings is clear. *Thomas* v. *Gray,* 35 Mich. 156; *Stuart* v. *Palmer,* 74 N. Y. 183; *State* v. *Lindel Hotel Co.,* 9 Mo. App. 455; *Kuntz* v. *Sumption,* 117 Ind. 1.

The law in question impairs the obligation of contracts and takes away vested rights. *Bradford* v. *Brooks,* 2 Aik. 284; *Bartlett* v. *Wilson,* 59 Vt. 23. It authorizes the taking of property without due process of law. *Stearns* v. *City of Barre,* 73 Vt. 281. It leaves the jurisdictional question of the convenience and necessity of individuals to be determined by the city council, which is not due process of law. *Norwood* v. *Baker,* 172 U. S. 269. The assessment is made a lien on the realty; a hearing is denied the property holders; and a burden is imposed without a corresponding benefit, in consequence of

all which such owners are entitled to equitable relief. 5 Pomeroy Eq. Jur. §421; *Verdin* v. *St. Louis,* 131 Mo. 106; *Dennison* v. *City of Kansas,* 95 Mo. 430; *Lewis* v. *Symmes,* 61 Ohio St. 471; *Gallagher* v. *Garland,* 101 N. W. 867; *Thomas* v. *Gain,* 35 Mich. 156; *Husch* v. *Seattle,* 10 Wash. 435.

*J. Ward Carver,* and *John W. Gordon* for the defendant.

In order for the complainants to maintain their bill it is necessary for them to show that a fraud has been committed upon them. In order to establish fraud, the facts constituting a fraud must be so full and explicit as to show the court a clear picture of the particulars of the fraud and the manner in which the party has been defrauded. *Ware* v. *Esterbrooks,* 73 Vt. 92; *Sprague* v. *Fletcher,* 67 Vt. 48; *Wright* v. *Bourdon,* 50 Vt. 494; *Ide* v. *Gray,* 11 Vt. 615; *Merrill* v. *Washburn,* 83 Me. 189; *U. S.* v. *Atherton,* 102 U. S. 372; *Stevens* v. *More,* 73 Me. 559; *Marquez* v. *Frisbie,* 111 U. S. 473; *Small* v. *Boudinot,* 9 N. J. Eq. 381; *Buzzen* v. *Houston,* 119 U. S. 347; *Parksborough* v. *Brown,* 106 U. S. 355; *Pratt* v. *Pound,* 5 Allen 59; Story Eq. Pl. §251-252.

The street commissioners as individuals are not named and no charge is made against them of individual corrupt conducit. *State* v. *Williams,* 39 Kan. 517; *Foote* v. *Milwaukee,* 18 Wis. 271; *Alexander* v. *Dist. of Columbia,* 1 Mack 217.

A demurrer does not admit fraud that is charged generally, nor that the facts charged amount to fraud although the bill style them fraudulent. *Carter* v. *Anderson,* 4 Ga. 516; *Bryan* v. *Spruill,* 4 Jones Eq., 27 (N. C.); *Armstead* v. *Durham,* 11 Beare 422; *McLan* v. *Ordway,* 76 Ala. 347; *Toles* v. *Johnson,* 72 Ill. App. 182.

The necessity and expediency of paving the streets is not the question upon which the abuttors have the right to appeal. The Legislature had the right to delegate the decision to the city council or to any tribunal it might establish upon the question of whether or not the public good, convenience and necessity of individuals requires the improvement to be made. Cooley on Taxation, 2d ed. 63-4 and 656-7; *Diamond* v. *City of Munkato,* 61 L. R. A. 448; *Warren* v. *Boston,* 187 Mass. 290; *Ludlow* v. *Trustee,* 78 Ky. 357; *Moore* v. *People,* 106 Ill. 376; *County of Henipen* v. *Bartlesson,* 37 Minn. 343; *Matter of D'Peyster,* 80

N. Y. 565; *Fairbanks* v. *Mayor et al.,* 13 Mass. 43; *State of Fort Wayne* v. *Cody,* 53 Ind. 97; *Ricketts* v. *Spokane,* 37 Ind. 371; *Anderson* v. *Baker,* 98 Ind. 587; *Kelley* v. *Minneapolis,* 57 Minn. 294; *Warren* v. *Henley,* 31 Ia. 31; *Burns* v. *Atchison,* 2 Kan. 454; *In re Piper,* 32 Cal. 530; *Helmer* v. *Shoulters,* 114 Cal. 136.

The original assessment levied by the city for the cost of making a local improvement had been declared void for want of compliance with a jurisdictional requirement on a prior petition of the property owners. The Legislature may, in providing for the reassessment, dispense with such requirements, since it had the power in the first instance to provide that the work should be done and the assessment made without such requirements. *Frederick, et al.* v. *City of Seattle,* 13 Wash. 428; *City of Emporia* v. *Norton, et al.,* 13 Kan. 569; *City of Emporia* v. *Bates, et al.,* 16 Kan. 495; *Jones* v. *Tonawanda,* 158 N. Y. 448; *Donley* v. *Pittsburg,* 147 Pa. St. 348; *Wood* v. *Stoker,* 76 Cal. 545; *Lombard, et al.* v. *Chicago Park Commissioners,* 181 U. S. 33; *Voight* v. *Detroit,* 184 U. S. 115.

The assessment of property for the purpose of improving the streets is taxation and not taking property by eminent domain. The two are clearly distinguished. No appeal need be allowed in the cases of taxation from the decision of the city council. *Allen* v. *Drew,* 44 Vt. 174; *State* v. *Fuller,* 34 N. J. L. 227; Cooley on Taxation, 2d ed. 623-4.

The fact that the lots may be of different value with different improvements thereon is of no consequence provided the commissioners followed the rule of assessment according to frontage given them by the charter. *O'Reilly* v. *Kingston,* 114 N. Y. 439; *Beaumont* v. *City of Wilkesbarre,* 142 Pa. 198; *Whitman* v. *Reading,* 169 Pa. 375.

WATSON J. The bill alleges that on the 6th day of April, 1903, without petition from the landowners abutting Main street in the City of Barre, and without notice to, or any hearing of, or right to be heard by, the orators, a resolution was passed by the Board of Aldermen of that city, purporting to be an act of the city council, signed by the President of the Board of Aldermen and approved by the Mayor, as follows: ''Resolved by the city council of the City of Barre, now in session as follows: That whereas the public good, and the convenience and necessity of individuals demand that North Main street should be paved

from the National Bank northerly to Summer street, therefore, the street commissioners are hereby authorized and instructed to cause as much of said portion of North Main street to be paved, as the funds at their disposal will allow.'' Under the provisions of the city charter this resolution was, as its purport is alleged to be, an act of the city council. See *Blanchard* v. *City of Barre,* 77 Vt. 420, 60 Atl. 970. Such resolution being duly passed deciding that the public good, and the convenience and necessity of individuals demanded that the portion of North Main street therein specified be paved, the city council had jurisdiction to order and direct the street commissioners, as by the resolution they were ordered and directed, to cause such paving to be done. *Blanchard* v. *City of Barre.*

It is further alleged in the bill that under this resolution that part of Main street opposite the respective lots of the orators was excavated, graded, a heavy concrete foundation laid thereupon, paved, guttered, and drained; that this work was done by the street commissioners and paid for out of the funds indicated in the resolution, that is, funds set aside by the city council for the purpose of improving, maintaining and repairing the streets in the city; and that the orators and their predecessors in title have paid all the highway taxes assessed against them for such purpose.

An amendment to the city charter was subsequently obtained (Laws of 1906, No. 256) by which it is provided: ''That in case at any time within six years prior to the passage of this act, any street, lane or alley in said city or any portion of any such street, lane or alley has been drained, graded, paved or macadamized, curbed and guttered or that any such improvements have been made and the city council shall by resolution duly passed decide that such improvements when made were for the public good and convenience and necessity of individuals; the city council may order and direct the street commissioners to assess not to exceed one-half of the total cost and expense of such improvements upon all the lands and buildings abutting upon or adjacent to the street, lane or alley or part thereof that has been improved as above specified within six years prior to the passage of this act, and in the same manner according to special benefits per front footage as is provided above for assessments upon a petition in writing presented to the city council, signed by the owner or owners of two-thirds of the frontage of any

street, lane or alley in the city, or upon a resolution duly passed by the city council to make any improvements of like nature, as above specified." After the charter was thus amended the city council passed a resolution as follows: "Resolved by the city council of the City of Barre, now in session, as follows, that whereas, a portion of North Main street extending from its beginning at the intersection of Prospect street near the Universalist Church and the City Hall in said city, was in the year 1903, drained, graded, paved, curbed, guttered in a northerly direction to a point opposite the Miles Granite Building, so called, situated on said Main street, and that said draining, grading, * * *, was done by the City of Barre within six years * * *, now, therefore, the city council of the City of Barre hereby decides that said improvements of the draining, grading, paving, curbing and guttering, * * *, when made as aforesaid in the year 1903, were for the public good, and the convenience and necessity of individuals, * * *, and further that the city council does hereby order and direct the street commissioners of the said City of Barre, on due notice of the time and place of hearing, to assess not to exceed one-half of the total costs and expenses of said improvements * * *, upon all the lands and buildings abutting upon and adjacent to, said portion from South Main street, according to the special benefits per front footage."

It is contended in effect that since the right to make the improvements of 1903 was based on the public good and the convenience and necessity of individuals, the provisions of the charter giving such right are in conflict with the due process of law clause of the 14th Amendment to the Federal Constitution, as the owners of the frontage likely to be assessed for a portion of the expense thereof for special benefits were afforded no opportunity to be heard on the question of making the improvements; that so far as the charter, as amended by the Act of 1906, confers upon the city council the power to determine that such improvements already made were for the public good and the convenience and necessity of individuals when made, without any provision of law giving such owners a chance to be heard thereon, it is invalid for the same reason. Do the provisions of the charter authorizing the determination of these two questions without notice to abutting landowners deprive them of due process of law? Our attention is called to the doctrine laid down in *Stearns* v. *City of Barre*, 73 Vt. 281, 50 Atl. 1086, 58

L. R. A. 240, 87 Am. St. Rep. 721. There the city undertook to take water rights under the power of eminent domain, and it was held that the property owners had a constitutional right to notice and hearing on the question of necessity. But the provision of the State Constitution there invoked has no application where, as in the case at hand, no property was directly taken nor sought to be so taken, and the proceedings by the municipality were wholly in the exercise of the right of taxation. *Allen* v. *Drew,* 44 Vt. 174. In the steps taken up to and including the finding by the city council respecting the public character and the convenience and necessity of the improvements of 1903, as authorized by the amended charter, no assessment of property was involved, nor was the question of special benefits to the abutting landowners, hence prior notice to such landowners was not required by due process of law. In *Voight* v. *Detroit,* 184 U. S. 115, 46 L. ed. 459, it was contended that the plaintiff was deprived of his property without due process of law, because the statute made no provision for notice to property owners of a time and place of hearing upon either the question of fixing a taxing district or the question of the amount of the award to be spread thereon. The statute did provide for notice and hearing in relation to the proportion each piece of property should bear of the whole cost of the improvement. Ruling against this contention, the Court, by Mr. Justice McKenna, said it would be difficult to find any provision fairer than this in purpose and which so essentially satisfied every requirement of due process of law; that the property owner was given an efficient opportunity to be heard to test the legality of the charge upon him, with which alone he was concerned, and of which he alone could complain; and that the legality of the charge necessarily involved the legality of all which preceded it and of which it was the consequence. The case of *Goodrich* v. *Detroit,* 184 U. S. 432, 46 L. ed. 627, 22 Sup. Ct. 397, involved the question of taking property for a public street, that of fixing the district benefited by the opening of the street, and the validity of assessments on other property for benefits resulting thereto. It was there argued that the owners of the property liable to be assessed for the benefits were just as much interested in the question as to the necessity of making the improvements and the amount of compensation as were the owners of the land to be taken for the improvements, and that the same reason for notice existed

in the one case as in the other. It was said, Mr. Justice Brown delivering the opinion of the Court, that the law is too well settled to be disturbed, that the interest of neighboring property owners who may thereafter be assessed for the benefits to their property accruing from opening a street is too remote and indeterminate to require notice to them of the taking of lands for such improvement, in which they have no direct interest, and hence it has been held that it is only those whose property is proposed to be taken for a public improvement that due process of law requires shall have prior notice. The same doctrine was acted upon in the recent case of *Londoner* v. *Denver*, 210 U. S. 373, 52 L. ed. 1103, 28 Sup. Ct. 708. In that case the charter gave the city council authority to determine conclusively that the improvements were duly ordered by the board of public works after due notice and a proper petition. In the exercise of this authority the city council, in the ordinance directing the improvements to be made, adjudged in effect that a proper petition had been filed. The only question relating thereto before the Court was, whether the charter provision authorizing such a finding without notice to the landowners denied to them due process of law. Thereon the Court, by Mr. Justice Moody, said: "We think it does not. The proceedings, from the beginning up to and including the passage of the ordinance authorizing the work, did not include any assessment or necessitate any assessment, although they laid the foundation for an assessment, which might or might not subsequently be made. Clearly all this might validly be done without hearing to the landowners, provided a hearing upon the assessment itself is afforded." *Matter of Zborowski*, 68 N. Y. 88.

It is further said in argument that the provisions of the charter purport to authorize the street commissioners to assess the abutting landowners and make the assessment a lien on their property without notice to them and that consequently such provisions are invalid. But we think this argument is based upon a misconception of the proper construction of the charter which in this respect reads: "The city council may order and direct the street commissioners to assess not to exceed one-half of the total cost and expense of such improvements upon all the lands and buildings abutting upon and adjacent to the street, * * *, and in the same manner according to special benefits per front footage as is provided above for assessments upon a petition in wri-

ting presented to the city council signed by the owners of two-thirds of the frontage of any street, * * *, or upon a resolution duly passed by the city council to make any improvements of like nature as above specified." The provisions there referred to as specifying the method of procedure on petition presented or resolution passed expressly provide that the assessments shall be made on twelve days' notice of the time and place of hearing to the parties interested. In other words, the law requires such notice to them, gives them a right to a hearing, and an opportunity to be heard. Certainly nothing more is essential to constitute due process of law. *Bartlett* v. *Wilson*, 59 Vt. 23, 8 Atl. 321; *Spencer* v. *Merchant*, 125 U. S. 345, 31 L. ed. 763, 8 Sup. Ct. 921; *Fallbrook Irrig. District* v. *Bradley*, 164 U. S. 112, 41 L. ed. 369, 17 Sup. Ct. 56; *Bauman* v. *Ross*, 167 U. S. 548, 42 L. ed. 270, 17 Sup. Ct. 966; *French* v. *Barber Asphalt Paving Co.*, 181 U. S. 324, 45 L. ed. 879, 21 Sup. Ct. 625; *Londoner* v. *Denver*, noticed above.

Our attention is called to the fact that in this respect the Act of 1906 does not purport to be curative in character, but "new and original," having intended retrospective operation, by reason whereof it is contended that obligations of contracts are impaired and vested rights taken away. But this contention is unsound. Assuming without deciding that the improvements made were in excess of those called for by the resolution of April 6, 1903, such excess was but an irregularity, and the improvements as a whole could be and were subsequently adopted by the municipality in paying therefor, and by procuring, as is alleged, the act in amendment of the charter, on its application to the Legislature "for permission to assess the abutting landowners on said street in a sum not to exceed one-half of the total costs of" the improvements thus made. No principle of contract was involved between the municipality and the owners of the lands assessed, and be the amendatory act in the respect named curative or "new and original," legislative power was legitimately exercised in authorizing special assessments for benefits inuring to abutting property from local improvements already made. In *Seattle* v. *Kelleher*, 195 U. S. 351, 49 L. ed. 232, 25 Sup. Ct. 44, when the improvement (grading street) in question was ordered, by the city charter a part thereof consisting of planking was to be paid for out of the general taxes, and the other elements by special assessment, according to the

assessed value of abutting property. After the work was done, a new charter was adopted under which the assessment was to be by the front foot, and for the costs of the improvement. One ground of argument was that the planking could not be included in the assessment, since at the time the work was ordered and done the law in force did not authorize a charge for planking upon the abutting property. In disposing of this part of the case the Court, by Mr. Justice Holmes, said that if the planking was not authorized under the word "sidewalks," the city had done or adopted the work, and at the end it was there at the city's expense; that the principles of taxation are not those of contract, and that a special assessment may be levied upon an executed consideration, that is to say, for public work already done; that the charge of planking on the general taxes was not a contract with the landowners, and did not prevent a special assessment being authorized for it later; and that whether it be a reassessment or a new assessment, the Legislature could authorize it. Another case showing in principle that no vested rights were involved is *Bellows* v. *Weeks,* 41 Vt. 590.

It is further urged that the assessment in question was made by the commissioners according to the frontage without reference to the special benefits to the different properties and without regard to the great difference in value of the property assessed as belonging to the respective owners, and disregarding the facts that some of the abutting property was much more improved by way of buildings erected thereon than the lands of the several orators, and that some of the lots contain two or three times the square feet contained in the lands of the respective orators. Yet the bill alleges that the commissioners held meetings and found the amount of frontage specially benefited by said draining, grading, etc., to be 1,590.738 feet, and therefore, adjudged each foot of said 1,590.738 feet to be especially benefited to the extent of $3.4963, "and they did assess said lands and buildings abutting on said North Main street upon each individual piece of property according to frontage as follows: * * *, which assessment does not exceed one-half the cost of said improvement, and thereupon assessed your orator, Mary Jane Durkee, on a frontage of twenty feet, making your orator Mary Jane Durkee's assessment $69.73," etc.,—giving

with the same particularity the frontage and assessment of each one of the other orators.

We construe the allegations as in effect that the assessment was made upon the respective lands of the several orators according to the special benefits per front footage, as found by the commissioners. That this is the force intended by the pleader is obvious from the further allegation that a great many pieces of land with buildings thereon and adjacent to said street, were not assessed for the purpose of paying the costs of said improvements, and that these facts were well known to the commissioners. This allegation, taken in connection with allegations showing the assessment made, impliedly is, that the several pieces of land there referred to were not found by the commissioners to have been specially benefited by the improvements. *Sowles* v. *Village of St. Albans*, 71 Vt. 418, 45 Atl. 1050. Unless thus benefited, no assessment could be made thereon. This appears from the case to which reference was last made, also from *Barnes* v. *Dyer*, 56 Vt. 469.

After alleging somewhat more specifically regarding the differences in size, shape, and value of the abutting pieces of property, also in improvements by way of buildings thereon; and that notwithstanding the records show that the different properties were all equally benefited so much per front foot, some of the abutting landowners were more especially benefited than others; it is alleged that the "street commissioners, in the way and manner aforesaid, have knowingly and fraudulently adjudged that all of said lots and buildings thereon abutting said street, were of the same value, and were especially benefited all alike as to front footage, for that the said street commissioners then and there well knew that a great many of said lots were deeper than others of them, and were more valuable, and that the buildings and blocks of divers kinds of wood, brick, and granite on the several abutting lots were different in size, containing many more stories than others, and worth many more thousand dollars than other blocks and buildings, and that the benefits to the granite and brick blocks, worth from thirty to forty thousand dollars, were greater than the benefits to the wooden buildings worth from twelve to fifteen thousand dollars."

It will be observed that on the face of the bill, the only allegation which can be claimed as directly charging fraud, is a

conclusion drawn from the facts stated respecting the uniform assessment per front foot of the several abutting properties, in view of the alleged differences among them in size, depth, improvements by way of buildings, and value. The question then is, Do equal assessments per front foot for special benefits received, when such differences are, by the board making the assessments, known to exist, show that they must necessarily be unjust and unequal, and amount to that which a court of equity holds to be fraud? In *Beaumont* v. *Wilkes-Barre*, 142 Pa. St. 198, 21 Atl. 888, it was held that the fact that the abutting lots differ somewhat in depth and value does not of itself render the assessment void because of inequality. See also *Terry* v. *Hartford*, 39 Conn. 286. In *Witman* v. *Reading*, 169 Pa. St. 375, 32 Atl. 576, the assessment per front foot along the line of a sewer for benefits was in question. The court below held the assessment illegal, basing its conclusion mainly if not exclusively on the difference in value per front foot of the several properties. In reversing the judgment, the court of last resort said, properties in the same general situation are presumed to get the same general benefit from a common improvement, and as this benefit is assessed on property abutting on the line of the improvement, it is presumed to be fairly measured by the foot frontage on that line, though values may be and usually are very different and dependent on other circumstances, such as depth of the lots, the buildings erected thereon, the use to which they are put, and their proximity to business centers; that value undoubtedly is one element to be considered but not controlling.

In *Peters* v. *Newark*, 2 Vroom, 360, one objection to the assessment for benefits received by opening a new street was, that the commissioners adopted an erroneous principle in estimating all the property assessed as if it were unimproved, whereas some of it was, in fact, improved by having valuable buildings thereon. The court said it was not satisfied that in this the commissioners were wrong; that the advantage an owner of property acquires by the opening of a new street in a city must be mainly if not wholly the advanced value of the land; that the buildings on it would cost very nearly or quite the same without as with the improvements; and that the action of the commissioners in this regard was believed to have been in accordance with the common practice in like cases, which

in itself was no slight reason for supposing it to be correct. In *State* v. *Passaic*, 37 N. J. L. 65, the city charter required the commissioners to assess the cost of improvements ''upon the lands fronting on said improvement, in proportion to the benefit to be received by each lot or parcel thereof.'' One ground for setting aside the assessment made was, ''that in every case the assessment is in proportion to the number of lineal feet fronting on the avenue.'' The court said that on the evidence ''it may well be an equal benefit to every landowner upon the line of the street,'' and refused to set them aside. See also *Dooling* v. *Ocean City*, 50 Atl. 621; *People* v. *Mayor*, 63 N. Y. 291.

In *O'Reilley* v. *Kingston*, 114 N. Y. 439, 21 N. E. 1004, the action was brought to set aside and adjudge void an assessment made on lands of the plaintiff for paving a certain avenue in defendant city. Objection was made to the assessment on the ground that it was apportioned among the owners of the lots fronting upon the avenue in proportion to the frontage of each lot, some of the lots being vacant and others occupied by valuable buildings. By the city charter the land to be assessed was that bordering on or touching the street improved and it was the duty of the assessors to determine the benefits derived by the owners of such land. It was held that in thus determining the benefits the assessors acted judicially, and that their judgment could not be reviewed, unless they acted upon an erroneous principle in making the assessments; that the conclusion reached by them that the tax should be apportioned among the owners of the real estate bordering on the street according to the number of feet front, owned by each individual, was not necessarily an erroneous principle, if it was the assessors' judgment that each owner was benefited in that proportion; and on the other hand it might be the most just and equitable of any that could be adopted. In *Hoffeld* v. *Buffalo*, 130 N. Y. 387, 29 N. E. 747, the plaintiff sought in equity to have an assessment of his land for benefits received by way of improvements in extending a certain street adjudged void and its collection restrained. The assessors in finally determining the amount to be assessed for the benefits upon each of the pieces of land assessed, fixed the amounts without regard to the value of the buildings or other improvements on the respective parcels for the reason that they determined that the amount of benefits

was not affected by the improvements. On the plaintiff's land and some other of the lands assessed there were buildings, while other lots within the assessment were vacant. The assessors did not fail to consider the improvements on the lands, determined that the amount of benefits was not affected thereby, and assessed the several lots without regard to the buildings thereon. The assessment on the plaintiff's land was found to be disproportionately large. It was held that the assessors in thus making their estimate of the benefits did not proceed in violation of any rule of law, and that it was in harmony with the views upon which the case of O'Reilley v. Kingston was determined; that so far as appeared the excess in the assessment on plaintiff's property might have been the result of mere error in judgment of the assessors; and that the assessment did not seem to have been illegal in the sense requisite to the support of an action for relief against it.

In Hagar v. Reclamation Dist., 111 U. S. 701, 28 L. ed. 569, 4 Sup. Ct. 663, it is said: "The expense of such work may be charged against parties specially benefited and be made a lien upon their property. All that is required in such cases is that the charges shall be apportioned in some just and reasonable mode, according to the benefit received. Absolute equality in imposing them may not be reached; only an approximation to it may be attainable. If no direct and insidious discrimination in favor of certain persons, to the prejudice of others, be made, it is not a valid objection to the mode pursued that, to some extent, inequalities may arise." See also Allen v. Drew, and Seattle v. Kelleher, before cited.

Without further reference to decided cases on this question, sure it is that the statement of facts contained in the bill upon which the orators rely as showing fraud in the making of the assessment, do not in law carry such an inference, and consequently they do not warrant the characterization there given to the acts of the commissioners in this behalf. Special benefits are such peculiar benefits as the owner of land receives from local improvements, over and above the ordinary benefits which he receives as one of the community. The averred differences among the abutting properties were, with the other circumstances, matters for consideration by the commissioners in imposing the tax, and the fact that a uniform sum per front foot was imposed against several of the owners of frontage, and against

other such owners no imposition was made, does not in itself show a failure by the commissioners to comply with the resolution from which they derived their authority to act, nor that approximate equality was not attained.

It is unnecessary to consider when or under what circumstances equity will grant relief against such assessments on the ground of fraud. Suffice it that from the facts alleged fraud will not be inferred, and we cannot say that substantial justice was not done.

The question of misjoinder of the orators is also presented, but not considered. The disposition made of the other questions leaves the bill without anything upon which to stand.

*Decree reversed, demurrer sustained, bill adjudged insufficient, and cause remanded with directions that the bill be dismissed with costs to the defendant in this Court. Let the costs below be there determined.*