[Crim. No. 4656.   Second Dist., Div. Two.   June 29, 1951.]

In re MURRAY KEDDY, on Habeas Corpus.

William W. Larsen for Petitioner.

S. Ernest Roll, District Attorney (Los Angeles), and Ralph F. Bagley, Deputy District Attorney, for Respondent.

McCOMB, J.—This is an application for a writ of habeas corpus, seeking (a) the discharge of petitioner from custody on the ground that section 5501 of the Welfare and Institutions Code is unconstitutional, or (b) the release of petitioner on bail pending the hearing in the superior court to determine whether petitioner is a "sexual psychopath" or not.

*Facts:* Petitioner was convicted in the municipal court on two counts of misdemeanor: (1) Indecent exposure (Pen. Code § 311); and (2) lewd and dissolute conduct (Pen Code, § 647.5).

His motions for a new trial were denied and the court suspended further proceedings, certifying the matter to the superior court pursuant to the provisions of section 5501, Welfare and Institutions Code as amended (Stats. 1950, p. 439), which reads in part as follows:

"(a) When a person is convicted of a criminal offense, the trial judge, on his own motion, or on motion of the prosecuting attorney, or on application by affidavit by or on behalf of the defendant, if it appears to the satisfaction of the court that there is probable cause for believing such person is a sexual psychopath within the meaning of this chapter, may adjourn the proceeding or suspend the sentence, as the case may be, and may certify the person for hearing and examination by the superior court of the county to determine whether the person is a sexual psychopath within the meaning of this chapter."

Petitioner then appealed to the appellate department of the superior court from the order denying his motion for a new trial which appeal is now pending.

On April 27, 1951, petitioner appeared in the superior court, whereupon two psychiatrists were appointed to examine him and the hearing was set for May 7, 1951, and later continued to May 28, 1951.

Petitioner's application for bail was denied and he was

remanded to the custody of the sheriff. He then filed the present application for a writ and this court released him on bail in the sum of $500 pending a hearing upon this writ.

■ *Questions*: First: *Is section 5501 of the Welfare and Institutions Code constitutional?*

*Yes.* Petitioner contends that the act is unconstitutional because it (1) denies to petitioner the equal protection of the laws and is not uniform under article I, section 11, of the Constitution of the State of California[1]; (2) deprives him of his liberty without due process of law in contravention of article I, section 13, of the Constitution[2]; and (3) places him in jeopardy twice for the same offense contrary to the provisions of article I, section 13, of the Constitution.[3]

Petitioner's first and second claims have been settled adversely to his contention by the Supreme Court of the United States in *Minnesota ex rel. Pearson* v. *Probate Court,* 309 U. S. 270, 272 [60 S.Ct. 523, 84 L.Ed. 744, 745, 126 A.L.R. 530], wherein the court held a similar statute of the State of Minnesota constitutional and that such statute did not violate the equal protection clause of the Constitution of the United States or the due process clause thereof.

■ As to petitioner's third contention, he is not being twice placed in jeopardy for the same offense. A "sexual psychopath" is not committed because he is guilty of a crime. ■ A proceeding provided for by section 5501 of the Welfare and Institutions Code is a proceeding civil in nature, not criminal, and a person committed pursuant to the provisions thereof is not being confined for the commission of a criminal offense but because it has been determined that he is a "sexual psychopath." (*In re Moulton*, —— N.H.—— [77 A.2d 26, 28 [5-6]]; *Malone* v. *Overholzer* (D.C.), 93 F. Supp. 647 [1]; *In re Kemmerer*, 309 Mich. 313 [15 N.W.2d 652, 653 [2-4]]; *People* v. *Chapman*, 301 Mich. 584 [4 N.W. 2d 18, 26 [11]]; *State* v. *Green*, 360 Mo. 1249 [232 S.W.2d 897, 900 [1-3]]. See, for a splendid discussion of the subject *"Sane Law for Sexual Psychopaths,"* Stanford L. Rev., vol. 1,

---

[1]Article I, section 11, California Constitution reads: "All laws of a general nature shall have a uniform operation."

[2]Article I, section 13, California Constitution reads in part: "No person shall . . . be deprived of . . . liberty . . . without due process of law . . ."

[3]Article I, section 13, California Constitution reads in part: "No person shall be twice put in jeopardy for the same offense . . ."

No. 3, page 486 et seq., April, 1949. See, also, 126 A.L.R. (1940) 535 et seq.) Hence petitioner clearly is not being placed in jeopardy twice for the same offense.

■ Second: *Is petitioner entitled to be released on bail pending the determination of whether or not he is a "sexual psychopath"?*

*Yes.* The Constitution of the State of California provides in article I, section 6, as follows: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. . . ." Section 1272 of the Penal Code of California reads thus: "After conviction of an offense not punishable with death, a defendant who has appealed may be admitted to bail: . . . 2. As a matter of right, when the appeal is from a judgment imposing imprisonment in cases of misdemeanor. . . ." (*In re Torres,* 80 Cal.App.2d 579, 581 [1] [182 P.2d 573].)

Mr. Justice Bray in *In re Torres, supra,* at page 581 thus emphatically states the rule:

"On appeal from a judgment imposing imprisonment in a misdemeanor case, a defendant is entitled to bail as a matter of right. (Pen. Code, § 1272.)"

■ Hence it is clear under the Constitution, the Penal Code and the decided cases that petitioner was entitled to bail pending his appeal from the order denying his motion for a new trial after conviction of violating sections 311 and 647.5 of the Penal Code which were misdemeanors. This leaves remaining the question as to whether he was entitled to bail pending the hearing of whether or not he was a "sexual psychopath."

■ Respondent argues that since an insane person may be held without bail, petitioner, as a "sexual psychopath," was insane and therefore on an analogous principle to that applicable in insanity cases he could be held without bail pending the determination of whether or not he is a "sexual psychopath."

The fallacy in this argument is twofold:

(1) A "sexual psychopath" is not an insane person. (*People v. Tipton,* 90 Cal.App.2d 103, 104 [202 P.2d 330].)

In *People v. Tipton, supra,* the court said in discussing this subject:

"But one who is declared to be a sexual psychopath is not thereby *adjudged to be insane;* nor does chapter 4 of the Welfare and Institutions Code so contemplate. While one

adjudicated an insane person under Penal Code sections 1368 to 1372 cannot be proceeded against on a criminal charge until he becomes sane, no such condition is imposed by the sections of the Welfare and Institutions Code which provide for the commitment of a sexual psychopath to a state hospital for treatment. *One who has been adjudicated a sexual psychopath has not been found to be insane,* and under the provisions of section 5502.5 of the Welfare and Institutions Code, when the superintendent of the state hospital has notified the court that in his opinion a sexual psychopath has not recovered from his condition and will not benefit by further treatment, his return to the court for further disposition of his case is specifically provided.'' (Italics added.)

Therefore any attempt to draw an analogy between section 5501 of the Welfare and Institutions Code dealing with a ''sexual psychopath'' and section 5040 et seq. of the Welfare and Institutions Code dealing with insane persons is obviously untenable since the code sections deal with entirely separate and distinct classes of persons.

█ (2) The people of the State of California through their Constitution have provided in article I, section 6, that ''*all persons* shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great.'' (Italics added.)

This mandate of the people cannot be legally set aside by the civil, legislative or judicial branch of the government. It will be observed that the people, who are sovereign, have seen fit to provide that with but one exception, to wit, where a person has been charged with a capital offense, *all persons* are entitled to bail as a matter of right. Irrespective of the villainy of the accused or the heinousness of his offense, without regard for public opinion, or for the personal views of an individual officer as to the wisdom of the constitutional provision, such provision is binding without qualification upon the courts until the people have by inherited processes legally erased the constitutional mandate.

Only by strict adherence to this principle are we assured of the perpetuity of the guaranties of the Constitution in the equal administration of the laws where there are many judges of differing degrees of education, age, experience and background.

To insure the permanence of our free institutions all judicial officers must conform with the criteria established by the organic law.

No individual or public official is above, beyond or exempt from the mandates of the Constitutions, state and federal. If judicial officers do not abide by their solemn pledge to protect and defend the Constitution, as well as to observe the limitations prescribed thereby, we must expect from the average citizen only contempt for our most cherished institutions and legal concepts. If such event should occur the inevitable result will be decay of the republic, and government by men—not law—will result. Then, democracy will be abased and totalitarianism will drench the land. If the constitutional guaranties are wrong, let the people change them—not judges or legislators. Two wrongs cannot make a right.

History has demonstrated beyond a doubt that such a guaranty as is set forth in article I, section 6, of the Constitution is necessary for the protection of the citizen, and that it should be preserved at all hazards. Any judicial official who refuses to give his loyalty to this ideal because of his feeling of revulsion at the nature of the offense charged against the accused either does not conceive the doctrine in its full meaning or he profanes the hallowed words of the patriots who convened in Philadelphia in 1787.

In the case of *In re Henley*, 18 Cal.App. 1 [121 P. 933], the defendant had been arrested and charged with being addicted to the use of stimulants to the extent that he had lost the power of self-control. The statute, 2185c of the Political Code, read in part as follows: "Whenever it appears by affidavit to the satisfaction of a magistrate of a county, or city and county, that a person is so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control or is subject to dipsomania or inebriety, he must issue and deliver to some peace officer for service a warrant, . . ."

It is evident that such statute is analogous to the "sexual psychopath" statute now before this court. In the cited case, in holding that petitioner was entitled to bail pending a hearing, Mr. Justice Burnett made these appropriate remarks: "It appears that bail was denied by said magistrate, but upon what ground does not appear, nor is any reason advanced here for the order except that it is a matter of right under the provision of the constitution of the state that 'All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great.' (Art. I, sec. 6.) This is a wise and salutary measure,

and the scope of it is sufficiently comprehensive to include a person charged with being an inebriate. His right as to bail should certainly not be more restricted than that of a person accused of a grave crime. In the latter contingency no question would be raised except in the case of a capital offense as provided in the constitution.

"There might be instances under this statute where, for the safety of the individual or of society, it would be proper to deny bail, but unless such a showing is made, the said provision of the constitution should be held, we think, to apply. It is provided in said statute that the officer to whom the warrant of arrest is delivered must 'arrest and detain such person until a hearing and examination can be had.' This, of course, must be read in connection with said constitutional provision, as no one would contend that the legislative enactment could operate to modify or repeal any portion of the constitution.

"It is ordered that petitioner be admitted to bail in the sum of $250 pending the examination, . . ."

A similar conclusion was reached by the Supreme Court of New Mexico in *Ex Parte Romero*, 51 N.M. 201 [181 P.2d 811, 814 et seq.]

Nor is there any force in the argument that by affording petitioner the rights guaranteed to him by the people of the State of California through their duly adopted Constitution there may be released on bail a person who, for his own or the public safety, should be held in confinement. Sections 5040 et seq. of the Welfare and Institutions Code provides a full, adequate and complete procedure for the protection of petitioner or society if he is in fact insane. The district attorney is fully apprised of the information relative to petitioner's condition, and if the latter is mentally ill the district attorney or any other person may have him confined pursuant to the provisions of section 5047 et seq. of the Welfare and Institutions Code. (*In re Westcott*, 93 Cal.App. 575, 577 [270 P. 247].)

It is ordered that petitioner be permitted to remain on bail pending the determination of the superior court as to whether or not he is a "sexual psychopath."

Moore, P. J., concurred.

WILSON, J.—I concur in that portion of the majority opinion which upholds the constitutionality of section 5501 of the Welfare and Institutions Code and dissent from that

portion which holds that petitioner is entitled to bail while being held for examination as a sexual psychopath and from the judgment admitting him to bail.

Insofar as the misdemeanor charges upon which petitioner was convicted in the municipal court are concerned, he is entitled to bail pending his appeal from the judgment of conviction, but that is not the question before this court. The matter which this court is called upon to decide is whether he is entitled to be released on bail pending the hearing upon the allegation as to his sexual psychopathy. The proceeding to determine whether he is a sexual psychopath is entirely separate and apart from the criminal charges in the municipal court. Upon his conviction there he was certified to the superior court in order that that court might determine the matter of his sexual psychopathy and deal with him·accordingly.

One error of the majority lies in treating the sexual psychopath law as a penal statute and a proceeding thereunder as a criminal matter although it is not. Such a proceeding is not a criminal prosecution but is a ''civil inquest concerning defendant's mental condition and sexual deviations.'' (*People* v. *Chapman,* 301 Mich. 584 [4 N.W.2d 18, 26] ; *Malone* v. *Overholzer,* 93 F.Supp. 647.) It is a civil proceeding and a commitment is not regarded as a sentence or punishment. (*In re Moulton,* —— N.H. —— [77 A.2d 26, 28].) Constitutional provisions relating to criminal trials are not all pertinent to such proceedings as that under consideration since the statute is curative and remedial instead of punitive, and inasmuch as it is not a criminal statute the constitutional inhibition against compulsory self-incrimination is not applicable. (*State* v. *Green,* 360 Mo. 1249 [232 S.W.2d 897, 900, 901].) A person proceeded against under such a statute is not punished because of his condition. He is an unfortunate person and until cured is not fit to mingle in society and should be institutionalized until it is safe both for him and for society that he be released. (*In re Kemmerer,* 309 Mich. 313 [15 N.W.2d 652, 653].) An examination under the sexual psychopath statute is neither a criminal nor an adversary proceeding but is conducted by the state in its character as *parens patriae.* (*In re Masters,* 216 Minn. 553 [13 N.W.2d 487, 491, 158 A.L.R. 1210, 1216].)

The doctrine of *parens patriae* refers to the sovereign power of guardianship of persons ·under disability and the inherent and fundamental right and duty of the state to care for per-

sons who are unable to care for themselves or who are a menace to themselves or to the health, morals or safety of others. (*In re Turner,* 94 Kan. 115 [145 P. 871, 872; Ann.Cas. 1916E 1022] ; *McIntosh* v. *Dill,* 86 Okla. 1 [205 P. 917, 925-6] ; *State* v. *Green, supra,* p. 902.)

The Welfare and Institutions Code contains provisions for the detention, care and treatment of persons who are afflicted with abnormalities of various kinds. Division VI of the code is titled ''Mentally Irresponsible Persons,'' and part 1 of that division relates to commitments of such persons. Contained in division VI are provisions for the apprehension, hearing and examination of those who are mentally ill (insane after having been so declared) (§§ 5000 to 5160) ; feeble-minded persons and other incompetents not insane (§§ 5250 to 5264) ; narcotic addicts (§§ 5350 to 5361) ; dipsomaniacs, inebriates, and stimulant addicts (§§ 5400 to 5408) ; sexual psychopaths (§§ 5500 to 5518.) The proceedings relating to the apprehension, detention and custody of each class of incompetent persons is essentially the same. (See §§ 5050, 5256, 5351, 5400, 5501.)

The purpose of all the foregoing provisions, whatever may be the abnormal tendency of a person, is twofold: (2) to protect the afflicted individual from injury to himself and (2) to remove him from contact with the public so that he will not be a menace to the safety or the health of others. Admitting such a person to bail would frustrate the intent of the statute between the date of admission to bail and the date of his hearing and commitment. If the theory of the majority opinion should be accepted as the law of the state he would be entitled to bail pending his appeal and thus would be a continued danger to himself and a menace to all others with whom he might come in contact. I cannot bring myself to believe that a sexual psychopath whose tendencies are to maltreat and abuse little children should be permitted to roam the streets and inflict himself upon other victims while the proceeding which is verily intended to remove him from society is progressing through the courts.

The fallacy of such a theory is well illustrated by petitioner's record as set forth in the order of detention. The municipal court there certifies that he was convicted in that court of a violation of subsection 1 of section 311 of the Penal Code (indecent exposure) and subsection 5 of section 647 of the Penal Code (vagrancy—lewd and dissolute person). The court further certifies as follows: ''It further

appears that in 1941 defendant (then aged 13), committed numerous acts of sex perversion against various children (Penal Code Section 288) and animals (Penal Code Section 286), was an habitual masturbator; and was committed to juvenile authorities pursuant to subsections (k) and (m), Section 700, Welfare and Institutions Code; that Los Angeles Police Department records of January 21, 1951, state in part: 'Arrestee's character and personal habits . . . When a juvenile, developed excessive masturbation habits, also perverted sex drives, still masturbates, and could develop psychopathic tendencies.' That defendant was granted probation May 22, 1950, by Santa Monica Branch of the Los Angeles County Superior Court for five years, for violation of Penal Code Section 211 (robbery); . . ."

Manifestly a person with such a record of sex offenses and sex perversions as is indicated above is not a fit person to be at large.

When the statutory definitions of "mentally ill persons" and "sexual psychopaths" are analogized it will be found that there is very little difference. "'Mentally ill persons' means persons who are of such mental condition that without supervision, treatment, care or restraint they would be or might be dangerous to themselves or to the person or property of others." (Welf. & Inst. Code, § 5040.) "As used in this chapter 'sexual psychopath' means any person who is afflicted, in a form predisposing to the commission of sexual offenses, and in a degree constituting him a menace to the health or safety of others, with any of the following conditions: (a) Mental disease or disorder. (b) Psychopathic personality. (c) Marked departures from normal mentality." (§ 5500.)

From the foregoing definitions a "mentally ill person" is one who might be dangerous to himself or to the person or property of others, and a "sexual psychopath" is one who is a menace to the health or safety of others with the conditions of either mental disease or disorder, or psychopathic personality or both. In whichever class a person may be, he is afflicted with a mental condition or disorder and is deemed to be dangerous and a menace to others.

Furthermore, section 5501 requires the affidavit for the detention of a sexual psychopath to be substantially in the form specified for the affidavit of mental illness in section 5049. Throughout the statute the Legislature intended to and did place both groups of mentally disordered persons on the same basis as to apprehension and detention.

If the majority of the court is correct in their theory that

every person is entitled to bail irrespective of his condition and without reference to the fact that he is obviously a menace to other persons, then a mentally ill person who has been apprehended and detained as provided in sections 5050 and 5050.1 of the Welfare and Institutions Code would be entitled to bail no matter how violent he might be, since such mentally ill person is not deemed to be insane until he has had a hearing and has been so adjudicated by the court. (Welf. & Inst. Code, § 5041.)

A person of the type of petitioner, as indicated by the order of detention, is no less a menace to society and the public than a violently insane person who, intermediate his apprehension and commitment, is regarded only as mentally ill, yet the latter is kept in confinement from the time he is taken into custody. No case has been cited, and research has disclosed none, in which a person charged with being mentally ill or insane has been held to be entitled to be released on bail pending a hearing.

In *In re Henley*, 18 Cal.App. 1 [121 P. 933], relied on in the majority opinion, the court held that a person charged with the intemperate use of stimulants was entitled to bail pending examination. The question whether such a person was dangerous to himself or a menace to others was not involved. However, the court obviously realized that its decision in that case should not be regarded as an absolute rule applicable to all persons similarly charged when it said: ''There might be instances under this statute where, for the safety of the individual or of society, it would be proper to deny bail'' but in the absence of such a showing he should be admitted to bail. The order of detention of petitioner in the instant proceeding clearly shows that for the safety of society he should be restrained of his liberty until the superior court conducts an examination and makes proper disposition of him.

I would discharge the petition for a writ of habeas corpus and remand petitioner to the custody of the sheriff to be dealt with according to law in the superior court.