William R. MONROE, Petitioner,

v.

DIRECTOR, PATUXENT INSTITU-
TION, Respondent.

Civ. A. No. 12556.

United States District Court
D. Maryland.

March 11, 1964.

———◆———

Philip F. Bennett, Baltimore, Md., for petitioner.

Russell R. Reno, Jr., Asst. Atty. Gen. of Maryland, Baltimore, Md., for respondent.

WINTER, District Judge.

Petitioner seeks the issuance of a writ of habeas corpus, contesting the validity of his confinement in Patuxent Institution as a defective delinquent.

Petitioner has made two previous applications to this Court, and numerous applications to courts of the State of Maryland. The statement of the Court of Appeals of Maryland in his latest state application, Monroe v. Director of Patuxent Institution, 230 Md. 650, 187 A.2d 873 (1963), sets forth much of the history of petitioner's efforts to obtain an adjudication on the merits of the points that he raises. He was sentenced, on January 15, 1959, to a term of twelve years by the Circuit Court for Baltimore County upon conviction of armed robbery. His sentence was to run from November 1, 1958, the date of his trial. That Court also ordered that he be referred to Patuxent Institution.

On May 8, 1959 he filed a petition seeking relief under the Post Conviction Procedure Act. When relief was denied, he applied for leave to appeal to the Court of Appeals of Maryland, and that application was also denied, Monroe v. Director of Patuxent Institution, 223 Md. 660, 162 A.2d 766 (1960). Another application for leave to appeal was also denied by the Maryland Court of Appeals, Monroe v. Director of Patuxent Institution, 225 Md. 632, 170 A.2d 300 (1961). Meanwhile, he was, on July 27, 1960, adjudicated to be a defective delinquent and committed to the Patuxent Institution.

On August 3, 1962 petitioner, pro se, filed a petition for "re-hearing as a defective delinquent" in the Circuit Court for Baltimore County. He requested the appointment of counsel, the request was granted, and, on October 31, 1962, at a hearing before the Court, at which petitioner was present, his petition was dismissed. A subsequent application for leave to appeal, Monroe v. Director of Patuxent Institution, 230 Md. 650, 187 A.2d 873 (1963)—the first case cited above—was denied, on the ground that a 1961 amendment to the Annotated Code of Maryland, Article 31B, § 10 (Chapter 629 of the Acts of the General Assembly of Maryland of 1961), rendered petitioner ineligible to initiate a judicial redetermination of whether he was a defective delinquent, and that this amendment was not an illegal ex post facto law in its application to petitioner.

In this Court petitioner, through his Court-appointed counsel, presses two contentions. The first is that the defective delinquency statute, Annotated Code of Maryland, Article 31B, violates the due process clause of the Fourteenth Amendment to the Federal Constitution, in that it fails to provide for notice of the charge of being an habitual criminal prior to the adjudication of defective delinquency. The second is that the 1961 amendments to Article 31B are unconstitutional as applied to petitioner because they are prohibited as ex post facto laws. Respondent introduces two other contentions, the first, that there has been a failure on the part of petitioner to exhaust his available state remedies, and the second, that the term of petitioner's original commitment not having expired, petitioner, even if his contentions are found meritorious, is not entitled to relief in this proceeding.

These contentions will be considered seriatim, and additional facts, insofar as they relate to these contentions, stated.

A—*Exhaustion of Available State Remedies*:

■ If there are remedies under state law presently available to petitioner which have not yet been employed to obtain an adjudication of the contentions pressed in this Court, there can be little question but that this Court lacks jurisdiction under 28 U.S.C.A. §§ 2241 et seq., Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Midgett v. Warden, Maryland State Penitentiary, 329 F.2d 185 (4 Cir. 1964); Rudolph v. Warden, Maryland Penitentiary, 217 F.Supp. 579 (D.C.Md.1963); Otten v. State of Maryland, Director of Patuxent Institution, 216 F.Supp. 289 (D.C.Md. 1963).

Respondent points out that nowhere has petitioner raised his due process contention in the various proceedings in the state courts previously described, but respondent admits that petitioner's ex post facto argument was raised and rejected in his application for leave to appeal to the Court of Appeals of Maryland from the adverse ruling in the proceedings for a redetermination of defective delinquency in the Circuit Court for Baltimore County. As to the latter contention, respondent suggests that petitioner (a) may still have the right to proceed under the Maryland Post Conviction Procedure Act, Annotated Code of Maryland, Article 27, §§ 645A et seq., (b) has the right to seek the issuance of a writ of habeas corpus from a state judge (but not the right to appeal the denial of the issuance of a writ to the Maryland Court of Appeals) and (c), possibly, has the right to seek the issuance of a writ of mandamus to require a redetermination of whether he is a defective delinquent under the provisions of the Annotated Code of Maryland, Article 31B, § 10, as it existed prior to the 1961 amendment. Respondent is candid, however, in stating that, in the light of the language of the Court of Appeals in Monroe v. Director of Patuxent Institution, 230 Md. 650, 187 A.2d 873 (1963), these rights, or possible rights, have little practical effect because the Court of Appeals of Maryland has adjudicated petitioner's ex post facto argument against him.

■ The Court can take judicial notice that whatever rights petitioner may have to litigate his due process arguments they, too, are empty rights, because the Court of Appeals has repeatedly upheld the validity of the defective delinquency statute against objections based on due process grounds, as has this Court (Faulkner v. State, D.C.Md., Civil No. 14609, decided April 26, 1963), and it is unlikely that those decisions would be overruled by the Maryland Court of Appeals at this date.

■ 28 U.S.C.A. § 2254, after requiring that an applicant for a writ of habeas corpus establish that he has exhausted the remedies available in the courts of the state, provides two alternatives to such a showing—"that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." This Court concludes that, under the facts set forth, it has jurisdiction to determine petitioner's contentions on their merits.

B—*Availability of Relief by Federal Habeas Corpus*:

■ Respondent's argument is that petitioner was committed for a term of twelve years, dating from November 1, 1958, that this term will not expire until October 31, 1970, and that the validity of the trial resulting in this commitment has not been questioned and that, accordingly, the writ of habeas corpus is not yet available to question the propriety of petitioner's detention at Patuxent Institution as a defective delinquent.

In a recent case, Simon v. State, D.C. Md., decided by Judge R. Dorsey Watkins, 227 F.Supp. 588, a petitioner sought to attack only the validity of the Maryland Defective Delinquents Act,

where petitioner's tentative release date on his *original criminal sentence* was May 5, 1965. After analyzing some of the differences between commitment under the original sentence and commitment as a defective delinquent, Judge Watkins said, "*Just the few differences between incarceration in a state penal institution and confinement in Patuxent mentioned above clearly evidence that petitioner Simon has standing to raise the question which he sought to present \* \* \*.*" Cited as authority for this conclusion were In Re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149 (1894); and Miller v. Overholser, 92 U.S.App.D.C. 110, 206 F.2d 415 (1953). To these citations, which fully support this result, may be added Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

In Jones v. Cunningham, supra, it was held that a state prisoner who had been placed on parole was "in custody" within the meaning of 28 U.S.C.A. § 2241, so that a federal district court had jurisdiction to hear and determine his charge that his state sentence was imposed in violation of the United States Constitution. Although petitioner had been returned to the community, the Court found significant restraints on petitioner's liberty because of his conviction and sentence. To name a few: he could not drive a car without permission, he was required to report to his parole officer, to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest and temperate life. With regard to these, the Court said (371 U.S. p. 243, 83 S.Ct. p. 377, 9 L.Ed.2d p. 291):

" \* \* \* Such restraints are enough to invoke the help of the Great Writ. Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now

and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose —the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the members of the Virginia Parole Board within the meaning of the habeas corpus statute; if he can prove his allegations this custody is in violation of the Constitution, and it was therefore error for the Court of Appeals to dismiss his case as moot instead of permitting him to add the Parole Board members as respondents. \* \* \* "

■ The rationale of the Jones case seems applicable here. As Judge Watkins pointed out in the Simon case, supra, one adjudicated a defective delinquent is ineligible for parole, an opportunity granted a prisoner confined in any other penal institution after service of one quarter of his sentence.[1] Perhaps more significantly, as one adjudicated to be a defective delinquent, petitioner cannot be certain of release even after service of the full term of his initial commitment because, during the time that petitioner is an inmate of Patuxent, service of his original sentence is suspended, Article 31B, § 9(b), and he may be retained for an indefinite period until either he or anyone in his behalf, including the Director or an officer or employee of Patuxent Institution institutes legal proceedings which culminate in a determination that he is no longer a defective delinquent, Article 31B, § 10(a). If otherwise valid, the 1961 amendments to Article 31B limit the original minimum period for such an application to two

---

1. Prior to June 1, 1961, the effective date of Chapter 656 of the Acts of the General Assembly of Maryland of 1961, which amended Annotated Code of Maryland, Article 41, § 124(a), eligibility for parole was limited to persons having served one-third of sentence. The 1961 amendment reduced the period of eligibility to one-fourth of sentence.

years, provided that at least two-thirds of the original sentence has been served, and further limit a reapplication to three years after the previous application. It appears that being held in custody as a defective delinquent imposes far greater restraint upon the person committed than being held in custody under ordinary criminal process. Clearly, therefore, petitioner has standing to raise his substantive contentions.

## C—*Denial of Procedural Due Process*:

In his brief petitioner treats his conviction of armed robbery as a conviction of being a defective delinquent. Upon this assumption, petitioner contends that he was denied notice that, in being found guilty of armed robbery, he could likewise be found guilty as a defective delinquent.

█ Factually, petitioner is in error. He was not found to be a defective delinquent at the same time, or upon his being found guilty of armed robbery, and it is not the scheme of the Maryland Defective Delinquents Act, either before or after the 1961 amendments, that a person convicted of crime is at the same time found to be a defective delinquent. Rather, both in petitioner's case and under the statutory scheme, the finding of guilt of a crime and the determination of whether a defendant is a defective delinquent are two separate and distinct proceedings. Of course, the proceeding to determine if a defendant is a defective delinquent cannot be initiated unless and until a defendant is found guilty of a crime, but, even so, the former is a proceeding in which separate notice is given, a separate judicial determination, with or without a jury at the option of the subject is had, and a separate procedure for appellate review which may be invoked by the subject provided.

█ Petitioner was found guilty of armed robbery in the Circuit Court for Baltimore County on December 12, 1958. He was sentenced January 15, 1959 for a term of twelve years, accounting from November 1, 1958. Upon the recommendation of the Court, made a part of that sentence, he was transferred to the Patuxent Institution for evaluation and report. A report of the Director of Patuxent Institution was filed on April 13, 1960, and served on petitioner. On July 25, 1960, petitioner was summoned into open court, presumably to be advised of the charges and of his rights. A hearing was held July 27, 1960, and the matter submitted to a jury, which rendered its verdict that defendant was a defective delinquent, on the basis of which defendant was remanded to Patuxent Institution. From the docket entries in this proceeding it appears that defendant was represented by counsel, and his counsel awarded a fee for his services.

These proceedings were in accordance with the provisions of Article 31B of the Annotated Code of Maryland as they existed in 1960, and as they exist today. Extensive analysis of the statute is not necessary, except to state that § 6(a) authorizes a court, after conviction of a person of certain crimes, and upon request, to refer that person for examination for possible defective delinquency. By § 7 an examination is made by three persons on behalf of Patuxent Institution, who must state their findings in a written report addressed to the Court. If the report is that the person referred to is a defective delinquent, § 8 requires that the person be brought to court, advised of the substance of the report, and the fact that a hearing will be held to determine whether he is in fact a defective delinquent, and also that the subject has a right to be represented by counsel of his own choice or by counsel appointed by the court. Counsel is guaranteed access to all reports, records and papers (§ 8(b)), and the subject is entitled to psychiatric examination at the expense of the state by a psychiatrist of his own choosing (§ 7(b)). After selection of counsel, a hearing is required, either before the court or, upon application by the state or of the subject, by a jury. The court is required to return a special verdict as to whether the subject is a defective delinquent. By § 9, if

the subject is determined not to be a defective delinquent, he is returned to a regular penal institution with good time allowances granted prisoners under regular commitment, but if he is found to be a defective delinquent he is committed to Patuxent Institution for an indeterminate period, subject to periodic redetermination and review as provided in § 10. By § 11 of Article 31B prior to June 1, 1961 there was an unqualified right to appeal to the Court of Appeals of Maryland from a determination that a person was a defective delinquent, or a redetermination that he was a defective delinquent. Since June 1, 1961 appellate review is afforded only by application for leave to appeal. Appellate review, pre and post June 1, 1961, may be had at the instance of the state or the subject.

Statement of the facts concerning petitioner and the law applicable to him serves to distinguish petitioner's case from Rhea v. Edwards, 136 F.Supp. 671 (D.C.M.D.N.D.Tenn.1955), aff'd. sub nom. Edwards v. Rhea, 238 F.2d 850 (6 Cir. 1956), the sole authority relied upon by petitioner in support of his contention that he was denied procedural due process of law. That case arose under the Tennessee Habitual Criminal Act, which had been construed by state decision not to require that a defendant be given notice, in the indictment or otherwise, that upon being found guilty he could be sentenced to increased punishment as an habitual offender. In fact, the defendant was given no notice that if found guilty he would be sentenced as an habitual offender. In reliance upon Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), the Court held the Tennessee statute unconstitutional in its application, because the defendant was not given actual notice in advance of trial that he would be tried as an habitual offender, and the Court further held that the mere existence of the statute did not constitute such notice.

Here, petitioner had notice that he was to be tried as a defective delinquent. Here, petitioner was separately tried as a defective delinquent. Here, also, petitioner had separate counsel to represent him and, here, petitioner had a right of appeal to the Court of Appeals of Maryland which, for reasons best known to himself, he elected not to exercise. Rhea v. Edwards, supra, lends no support to petitioner's contention that he was denied procedural due process of law. Manifestly, this contention is without merit.

### D—1961 Amendments As Invalid Ex Post Facto Laws:

Petitioner calls attention to two significant changes made by the 1961 amendments applicable to him. The first relates to the time in which petitioner, or any person who has been judicially determined to be a defective delinquent may petition for a redetermination of his defective delinquency. Annotated Code of Maryland, Article 31B, § 10, as amended by Chapter 629 of the Acts of the General Assembly of Maryland of 1961, provides that a defective delinquent, or any person in his behalf, including the Director or any officer or employee of Patuxent, who has been committed to Patuxent for two years and shall have served two-thirds of his original sentence, including any confinement prior to commitment as a defective delinquent, may petition for a redetermination of his defective delinquency. The section further provides that once the right to apply for redetermination has been exercised it may not be reexercised until the expiration of three years following the first exercise. The second change relates to § 11, which grants appellate review only upon application for leave to appeal to the Court of Appeals of Maryland.

Prior to June 1, 1961—the effective date of the 1961 amendments—any person, or anyone in his behalf, including the Director or any officer or employee of Patuxent, who has been confined at Patuxent for two years, irrespective of the term of his original sentence, might apply for a redetermination of his defective delinquency although, once having applied for such a redetermination, he

might not again exercise that right until after the expiration of three years. Prior to its amendment, § 11 granted an absolute right to appeal to the Court of Appeals of Maryland as was granted "in other civil proceedings." Thus, petitioner complains of the additional limitation on the right to apply for a redetermination and the restriction on the absolute right of appeal. Petitioner contends that both of these changes are invalid because they are ex post facto laws in violation of the United States Constitution, Article 1, Section 10, Clause 1.

■ Respondent asserts as an answer to petitioner's contention the fact that the Maryland Defective Delinquents Act in its entirety is not a penal statute, but is rather a civil statute. Whether this characterization is valid is important, because it is well settled that the prohibition in the Constitution against a state's passing any ex post facto law has reference only to those statutes which are penal in nature, Calder v. Bull, 3 Dall. 386, 1 L.Ed. 648 (1798). That case defined as prohibited (3 Dall. p. 390, 1 L.Ed. 648):

> "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender * * *."

The Maryland Court of Appeals has repeatedly held that Article 31B is not a penal law and, hence, that the ex post facto and certain other constitutional prohibitions are inapplicable, Eggleston v. State, 209 Md. 504, 121 A.2d 698 (1956); McElroy v. Director of Patux-

ent Institution, 211 Md. 385, 127 A.2d 380 (1956); Blizzard v. State, 218 Md. 384, 147 A.2d 227 (1958); Simmons v. Director of Patuxent Institution, 227 Md. 661, 177 A.2d 409 (1962); McDonough v. Director of Patuxent Institution, 229 Md. 626, 186 A.2d 368 (1962); Herrman v. Director of Patuxent Institution, 229 Md. 613, 182 A.2d 351 (1962); Creswell v. Director of Patuxent Institution, 229 Md. 639, 184 A.2d 627 (1962); and Monroe v. Director of Patuxent Institution, 230 Md. 650, 187 A.2d 873 (1963). These cases all conclude that Article 31B is civil, not penal, in nature, and its objective is not punishment, but treatment.

Manifestly, this conclusion is correct when the legislative intent of Article 31B, as expressed in the statute itself, as expressed in Research Report No. 29 of the Research Division of the Legislative Council of Maryland, published in 1950 before the passage of the Act, and as expressed in the Report of Commission to Study and Re-Evaluate Patuxent Institution, published in 1961 before the passage of the 1961 amendments, is examined. These make clear that the concept of Article 31B is to expand as a practical matter, but not by actual definition, the concept of incompetency by defining a special group of persons as "defective delinquents." A "defective delinquent" is a person who, having intellectual deficiency or emotional unbalance, or both, and who by reason of persistent aggravated antisocial or criminal behavior, has evidenced a propensity toward criminal activity, such as to demonstrate clearly an actual danger to society. Such persons are required to be committed to a special institution for the combined purposes of incarceration and treatment until such time as they are judicially determined not to be defective delinquents.

The Defective Delinquents Act makes a valid distinction between criminal conduct as such, and criminal conduct, together with other factors, which, in a judicial proceeding embodying all of the safeguards of the rights of the subject

encompassed in the concept of procedural due process, serves as a basis for an adjudication that a subject is a defective delinquent. The purpose of an adjudication of defective delinquency is not to impose additional punishment as such for past criminal conduct, but to provide for treatment, if treatment is possible, or protection of the subject and society, if treatment is not possible, or both, so long as defective delinquency continues.

That these purposes and objectives render inapplicable any ex post facto prohibition is made clear by reference to Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Factually, that case is quite different from the case at bar, because it concerned the validity of a provision of the Social Security Act which terminated benefits payable to an alien deported on the ground of Communist party membership. But, in holding that the provision of the statute under attack was not, *inter alia*, an ex post facto law, the Court made the following significant comments (363 U.S. pp. 613–614, 80 S.Ct. p. 1374, 4 L.Ed.2d p. 1446):

> "In determining whether legislation which bases a disqualification on the happening of a certain past event imposes a punishment, the Court has sought to discern the objects on which the enactment in question was focused. Where the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected. The contrary is the case where the statute in question is evidently aimed at the person or class of persons disqualified.
> * * * "

The Court then reviewed a number of its past decisions. In each, where the validity of a statute was upheld against the argument that it was a prohibited ex post facto law, it was found that the purpose of the statute was not punishment to the person, but the protection of other interests, even though there was an incidental harsh effect on the person. The Maryland Defective Delinquents Act is of this type, because its purpose is not the imposition of additional punishment for a crime for which a conviction has been obtained, but the protection of an individual and society from a dangerous condition, of which the past commission of crime is one symptom, and the treatment of that condition which, in a separate proceeding, has been judicially determined to exist.

Viewed in the light of the test of the Flemming case, supra, the 1961 amendments are not prohibited ex post facto laws, because the basic statute which they modify is not a penal law.

It has long been recognized that in less enlightened concepts of incompetency, the subject may be committed for life. Under Maryland law such an incompetent would have the right to seek a redetermination of his incompetency, without limitation as to time or frequency.

It does not seem unreasonable that under a lesser degree of incompetency the same result of possible incarceration for life might result when the lesser degree of incompetency is accompanied by substantial criminal conduct; nor does it seem punitive that the right to seek a redetermination of defective delinquency should be more restricted than the case of the outright incompetent when the restriction is correlated to the sentence imposed for criminal responsibility.[2] Any argument that the 1961 amendments, insofar as they postpone

2. The limitation on the right to seek a redetermination of defective delinquency is applicable only to the person committed as a defective delinquent and persons acting in his behalf, including the Director or any officer or employee of Patuxent, Article 31B, § 10. By Article 31B, § 13, the institutional board of review of Patuxent is required to review every case at least once per year and, as a result of its review, may petition the committing court for redetermination of defective delinquency.

a redetermination of defective delinquency to a time which bears this correlation to the criminal sentence thereby renders them punitive, is essentially an argument of denial of equal protection of the laws, in that the effect of the denial is to render the subject not eligible for parole as is a person serving a criminal sentence, or ineligible for redetermination of incompetency as are persons who fit the classic test of incompetency. The short answer to such an argument is that when a person has committed a crime and is found to be deficient in either the intellectual or emotional qualities, or both, and to possess the other opprobrious qualities which render him a defective delinquent, it is not unreasonable for the legislature to treat him differently from the criminal not a defective delinquent, or the incompetent not a criminal. I conclude that petitioner's first complaint concerning the 1961 amendments lacks merit.

Bullock v. State, (D.C.Md., Civil No. 13128, decided July 5, 1963), does not require a different conclusion. That case decided, *as a matter of statutory construction,* that the portion of a 1963 amendment granting authority to hold a suspected defective delinquent beyond the expiration of his term pending a determination of defective delinquency had no application to a subject whose original term had expired prior to the effective date of the 1963 amendment, and who had sought his release before the effective date of the amendment. It decided no constitutional issue. In the case at bar, petitioner had accrued no right to a redetermination of his defective delinquency prior to June 1, 1961. He was adjudicated a defective delinquent on June 27, 1960, so that, on June 1, 1961, he had been committed to Patuxent for less than a year.

Petitioner's second complaint concerning the 1961 amendments—that relating to appellate review—is not more meritorious, and may be disposed of briefly. First, the amendment does not relate to a penal law. Ex Parte McCardle, 7 Wall. 506, 19 L.Ed. 264 (1869), held that even in an habeas corpus case a right of appeal existing under the law in force when the case was before the trial court may be completely abolished prior to its exercise, or even after its exercise but prior to final determination, and in Duncan v. State of Missouri, 152 U.S. 377, 382, 14 S.Ct. 570, 38 L.Ed. 485 (1894), there is dictum that "the prescribing of different modes of procedure, and abolition of courts and creation of new ones" in criminal cases are not foreclosed by the ex post facto prohibition. See also, Mallett v. State of North Carolina, 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015 (1901), as upholding a statute, adopted after the commission of the offense and the original trial, which granted a right of appeal to the state from the granting of a motion for a new trial.

§ 11 of Article 31B is not as drastic as the Act held valid in the McCardle case. It does not eliminate the right of appeal; it serves only to restrict it. It might be added that, by reference to the practice of the Maryland Court of Appeals in regard to a similar restriction adopted in the Uniform Post Conviction Procedure Act, and the practice under the 1961 amendments in defective delinquency cases, the denial of an application for leave to appeal is tantamount to a full consideration and discussion of the merits of the appeal.

The Court is aware that there has been argued and submitted in the United States Court of Appeals for the Fourth Circuit the consolidated appeals, Sas v. State of Maryland, Director of Patuxent Institution, Nos. 9094, 9095, 9096, 9098, and 9143. These appeals raise points, some of which are touched upon in the case at bar. Because the case at bar involves some additional questions, it has been thought better to decide it now, rather than to await the views of the United States Court of Appeals for the Fourth Circuit, so that if petitioner is aggrieved by the decision here and wishes to pursue an appeal he may be in a position to do so. In the event petitioner does not appeal from this decision, the pendency of the consolidated appeals

justifies this Court, in denying petitioner's application for a writ of habeas corpus, to deny it without prejudice to petitioner's right to relitigate any of the questions decided here should the United States Court of Appeals for the Fourth Circuit, in deciding the Sas appeals, provide a basis for a contention that any of the rulings contained herein are incorrect.

It is, therefore, this 11th day of March, 1964, by the United States District Court for the District of Maryland,

Ordered, that the petition for a writ of habeas corpus be, and it is hereby, denied, without prejudice to a reopening of the same upon the terms and conditions set forth in the opinion preceding this order.