## BLIZZARD *v.* STATE

[No. 66, September Term, 1958.]

*Decided December 19, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Spiro T. Agnew* for the appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with
whom was *C. Ferdinand Sybert, Attorney General,* on the
brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

Rodney Blizzard appeals from an order of the Circuit Court
for Baltimore County finding him to be a defective delinquent
as defined in Code (1951), Article 31B, Sec. 5, and com-
mitting him to the Patuxent Institution as a defective de-
linquent for an indeterminate period of time, without limits,
according to the provisions of Article 31B of the 1951 Code,
subject to the further order of said court.

We may note at the outset that Section 5 of Article 31B
of the 1951 Code was amended by Chapter 558 of the Acts of
1957, effective June 1, 1957, and that this proceeding appears
to have been initiated on August 20, 1957. Neither side has
made any point of this amendment, and its effect would ap-
pear not to be adverse to the appellant so far as the present

case is concerned. The commitment, though referring to the 1951 Code, is in conformity with Section 9 (b) of Article 31B of the 1957 Code. That Section was not amended during the interval between the two editions of the Code.

The principal question at issue is whether a hearing to determine whether a person is or is not a defective delinquent is to be governed by rules applicable to civil or to criminal proceedings. The appellant contends that the case should be treated as a criminal case, at least procedurally, and that the degree of proof required should be that required in a criminal case—beyond a reasonable doubt—and not that which is sufficient in a civil case—the preponderance of the evidence. He further urges that the Maryland constitutional provision (Article 15, Section 5), under which the jury is the judge of the law as well as of the facts in a criminal case should be applicable.

It is clear since the decisions in *Eggleston v. State*, 209 Md. 504, 121 A. 2d 698, and in *McElroy v. Director Patuxent Institution*, 211 Md. 385, 127 A. 2d 380, that a proceeding under the Defective Delinquent Law (Article 31B of the 1957 Code) is in substantive matters a civil proceeding; and the appellant does not make any contention to the contrary. We also think that it is now quite clear that it is the intention of the General Assembly that such proceedings be regarded as civil in nature as to procedural matters as well.

The *Eggleston* and *McElroy* cases were both decided in 1956. At its next session thereafter the General Assembly adopted several amendments to Article 31B. It changed the law involved in the *Eggleston* case with regard to credit against criminal sentences for time spent in the Patuxent Institution. See the amendments of Sections 4, 7, 9, 10 and 13 of Article 31B of the 1951 Edition of the Code. It also amended Section 11 (apparently to avoid or clarify a question raised in the dissenting opinion in the *McElroy* case) by changing the right of appeal from one "as after any conviction of felony" to one "as in other civil proceedings." (See Chapters 378 and 762 of the Acts of 1957). Also, by Chapter 558 of the Acts of 1957, sub-section (c) of Section 4 was split into two parts—(1) and (2)—and a new paragraph was

added to sub-section (2).[1]  Section 4 provides for the examination by the Patuxent Institution of prisoners sent to it by the Department of Correction to determine whether or not such prisoners are defective delinquents.

The new second paragraph of Section 4 (c) provides that if the clinic shall find a prisoner so referred to it and examined to be a defective delinquent, it shall file a report of its findings with the court by which the prisoner was sentenced. The prisoner is entitled to contest such a finding.  If he does so, he is entitled to a hearing "pursuant to the applicable provisions of § 8 of this article," and at such a hearing, the new paragraph provides that "the burden of proof shall be upon the clinic to establish by a preponderance of the evidence that said person is a defective delinquent."  It is to be noted that a hearing under this paragraph of Section 4 (c), like a hearing under Section 8, is for an initial determination of defective delinquency.  The provisions of this new paragraph are the substantial equivalents of the provisions of Section 6 with regard to requests for examinations, of Section 7 with regard to how examinations shall be made and of Section 8 (the applicable provisions of which are adopted by reference in the new paragraph of Section 4 (c)).  Section 9 (b), which provides for commitments to the Institution for an indefinite term is applicable to a finding of defective delinquency under either Section 4 or Section 8.  It seems clear from the burden of proof language of the new paragraph of Section 4 (c) that a hearing thereunder is to be regarded as civil in its procedural aspects, and we see no reason for supposing that a hearing under Section 4 should differ from a hearing under Section 8 in its nature as to either substantive or procedural matters.

Compare Section 10 of Article 31B of the Code (1957) dealing with petitions for rehearing after an initial determination of defective delinquency, which, as amended by Chap-

---

1. See note in the 1957 Annotated Code to Section 4 of Article 31B relating to the amendments to that Section made by Chapters 558 and 762 of the Acts of 1957 and the codification thereof. There is no apparent actual conflict between the amendatory provisions of these two Acts.

ter 762 of the Acts of 1957,[2] clearly provides that a petition for review—whether filed in one of the counties or in the City of Baltimore—must be filed in one of "the law courts."

The above statutory changes, we think, confirm the civil nature of proceedings under Article 31B, as determined in the *Eggleston* and *McElroy* cases. Nor do we think that Chapter 760 of the Acts of 1957, amending Section 7 of Article 42 of the 1951 Code, points to any different conclusion. That statute made the provisions of Sections 4, 5 and 6 of Article 42 (which is entitled "Habeas Corpus") applicable to persons confined in the Patuxent Institution as defective delinquents, in addition to persons "detained for or confined as the result of a prosecution for a criminal offense." Section 6 permitted applications for leave to appeal to the Court of Appeals in *habeas corpus* cases. Chapter 760 of the Acts of 1957 thus effected a legislative reversal of the result of the *McElroy* case.

We have also noted that Section 6 of Article 42 of the Code (which was unchanged from the 1951 to the 1957 Edition) was repealed by Chapter 45 of the Acts of 1958,[3] and that this statute was a companion Act to Chapter 44 of the Acts of 1958, and to some extent overlapped Section 645A (b) of Article 27 of the Code, as enacted by Chapter 44. Chapter 44 is the Post Conviction Procedure Act, which now constitutes Sections 645A-645J of Article 27 of the Code (1957 Ed., 1958 Supp.). Under Section 645A, that Act applies to "[a]ny person convicted of a crime and incarcerated under sentence of death or imprisonment, *including those confined as a result of a proceeding under Article 31B of the Code, title 'Defective Delinquents,'* * * *." (Italics supplied.) The italicized language just quoted was evidently intended to afford to in-

---

2. Amendments to Section 10 identical in this respect with those contained in Chapter 762 were also made by Chapter 378 of the Acts of 1957.

3. Cf. Sec. 645-I of Article 27 of the Code (1957 Ed., 1958 Supp.), which provides for applications for leave to appeal under the Post Conviction Procedure Act in terms substantially identical with those relating to *habeas corpus* cases under Sec. 6 of Article 42, now repealed.

mates of the Patuxent Institution the same benefits to which inmates of the Penitentiary, House of Correction or of any jail or other prison are entitled under the Act.

Whether the above italicized phrase was adopted simply as a convenient way of making sure that the inmates of the Patuxent Institution would be covered by the new Act, or whether it was used because conviction and sentence are prerequisites to proceedings leading to commitment to that Institution does not seem important. The civil character of such proceedings was established by the *Eggleston* and *McElroy* cases, and had been confirmed by the 1957 legislative action above referred to. Repeals by implication are not favored and we cannot find that by this phrase contained in the Post Conviction Procedure Act, the General Assembly intended to reverse the position which it clearly affirmed or reaffirmed after the decisions in those two cases.

There is nothing in *Caparella v. State,* 214 Md. 355, 135 A. 2d 311, which, we think, leads to an opposite conclusion. That case, much relied on by the appellant, holds that the Patuxent Institution is a place of confinement within the meaning of the statute penalizing escapes from such places (Code (1957), Article 27, Section 139). In that case, repeating what had already been said in the *Eggleston* case, Judge Henderson pointed out (214 Md. at 357) that: "Patuxent Institution is neither a prison, a hospital nor an insane asylum, but exercises some of the functions of all three * * *." The *Eggleston* case was cited with approval, and in that case, also in an opinion by Judge Henderson, this court said (209 Md. at 514): "In character the Act is not unlike statutes providing for a civil inquiry into the sanity of a person. This character is not altered by the fact that it deals only with persons who have demonstrated criminal tendencies resulting in criminal convictions, nor by the fact that it utilizes some of the traditional methods of adjudication and review that have been developed in the criminal law. See *State ex rel. Sweezer v. Green,* 232 S. W. 2d 897 (Mo.); *Ex parte Keddy,* 233 P. 2d 159 (Cal. App.); *People v. Chapman,* 4 N. W. 2d 18 (Mich.); *People v. Piasecki,* 52 N. W. 2d 626 (Mich.)."

Commitment proceedings under Article 31B (quite properly, we think) throw extensive protections around the person involved therein; and in many respects they are such protections as are afforded to the accused in a criminal case. However, such proceedings do not charge the person involved with any crime. They are not prosecuted on indictment or information, but are based upon a report of a clinical examination. Conviction and sentence for crime are historical facts which are prerequisites to the examination leading up to the commitment proceedings, but there is no issue as to guilt or innocence of any crime or crimes of which the person involved has already been convicted. (Cf. prosecutions under statutes where a second or subsequent offense may be penalized more severely than a first offense, as in *Beard v. State*, 216 Md. 302, 140 A. 2d 672, and *McCoy v. State*, 216 Md. 332, 140 A. 2d 689.) The sole issue is whether the person before the court is or is not a defective delinquent.

In addition to the authorities from other States cited in the *Eggleston* case, we think that the following decisions support or tend to support the view that proceedings under such a statute as our Defective Delinquent Law are civil in nature and should be so regarded for procedural, as well as substantive, purposes: *In re Moulton*, 77 A. 2d 26 (N. H.); *In re Mundy*, 85 A. 2d 371 (N. H.); *Malone v. Overholzer*, 93 F. Supp. 647 (Dist. Ct., D. C.); *Miller v. Overholzer*, 206 F. 2d 415 (Circ. Ct., D. C. Circ.); *People v. Sims*, 47 N. E. 2d 703 (Ill.); *People v. Redlich*, 83 N. E. 2d 736 (Ill.); and *People v. Ross*, 101 N. E. 2d 112 (Ill. App.).

*Order affirmed, with costs.*